# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT HARTFORD
4/6, 2017
Roberta D. Tabora, Clerk
By: Deputy Clerk

| | | |
|---|---|---|
| LISHAN WANG, | : | |
| Plaintiff, | : | COMPLAINT CIVIL |
| | : | |
| v. | : | ACTION NO. 3:17CV586 AVC |
| | : | |
| MIRIAM DELPHIN-RITTMON, | : | DATE: April 6th, 2017 |

**HELENE VARTELAS,** CEO, CONNECTICUT VALLEY HOSPITAL

**THOMAS WARD-MCKINLAY,** PSYCHOLOGIST, DIRECTOR OF WHITING

**Dr. Victoria Dreisbach**, PSYCHIATRIST

**Defendants** :

## I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a) (3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure. **Monroe v. Pape**, 365 U.S. 167 (1961). **Monell v. New York City Dept. of Social Services**, 436 U.S. 658 (1978). Plaintiff's claims for the inherent dignity and of the equal and inalienable rights are authorized by Universal Declaration of Human Rights and the agreements between the United States (US) and the People's Republic of China (PRC).

2. 1964 Civil Rights Act-This prohibits discrimination in education, employment, and **public accommodations** on the basis of "race, color, religion, or national origin." 1925 *Gitlow v. New York*. The U.S. Supreme Court decides that states cannot interfere with free speech any more than the federal government can. This decision also

establishes that the Fourteenth Amendments, guaranteeing all citizens the right of due process, extends to state as well as federal actions.

3. In ***Sell v. U.S.***, 539 U.S. 166 (2003), The U.S. Supreme Court has ruled that "assuming that defendant was NOT dangerous to himself or others, he could NOT be ordered involuntarily to take antipsychotic drugs solely to render him competent to stand trial without consideration of important questions about trial-related side effects and whether they were likely to undermine fairness of trial."
4. Whiting Forensic Institute (or Whiting, hereafter) is a healthcare facility. It also subjects to the regulation of the State and Federal laws regarding patient care, including the policies set by *the Joint Commission*. Section 1983 has also granted an *un-sentenced* patient/inmate to sue doctors and other healthcare workers who mistreat the plaintiff. ***West v. Atkins***, 487 U.S. 42 (1988).
5. The recent Hoffman report, commissioned by **the American Psychological Association** (**APA**) which relates to ethics, interrogations, and torture, revealed both devastating moral failing by a few individual psychologists and a more general vulnerability in broader sections of the profession. The ethical guidelines of **the American Academy of Psychiatry and the Law** stipulate that despite the adversarial nature of legal proceedings, *psychologists and psychiatrists* "should adhere to the principle of honesty and strive for objectivity." It is illegal, inhumane, and unethical for New Haven Superior Court to use the State hired experts (or guns) to dishonestly misdiagnose Mr. Wang with certain phony "mental illness", to defame him, and to demonize him.
6. In August 2015, the Interrogation Ban had been enacted by **APA**. The Council of Representative of **APA** voted 157-1 to ban psychologists from participating in national security interrogations. The Plaintiff Lishan Wang is an "*un-sentenced*" patient and should NOT be subjected to psychological warfare and mental torture, such as being instilled and forced into "Learned Helplessness". it is cruel, barbaric, brutal and inhumane for Whiting to use abusive State employees as "hounds" to provoke, abuse, and bully "mentally ill patients" including Mr. Wang in order to make him "insane" and thus "justify" the sham doctors' diagnosis with lies.
7. **The Nuremberg Code** and **the Declaration of Helsinki** regarding using human subjects for medical research.
8. The recent widely-publicized trial of an ex-Nazi Auschwitz guard (**Reinhold Hanning**) for an accessory to murder. It means that any State Employee at Whiting is committing a crime if he or she does NOT speak out the abuses, discrimination, and crimes which had been committed by other State Employees against Mr. Wang. Healthcare workers are supposed to "heal patients", NOT to abuse or harm patients. A few of healthcare workers have been violating the ethical principle of "*DO NO HARM*". Whiting is a cancer! The State of Connecticut is ranked on the top of the state debt list in U.S. whose state debt per person is $5,491 (***TIME*** February 22-29, 2016). Even if the patients at Whiting have been used as "subjects for medical research", the results are phony and the society would NOT benefit from the medical experiments at Whiting because of the universal frauds and daily lies occurred at Whiting!
9. The US Courthouse at Hartford, CT 06103 is an appropriate venue under 28 U.S.C. Section 1391(b) (2) because it is where part of or ALL the events giving rise to this claim occurred. It is also appropriate to ask U.S. Court to uphold the rulings of the U.S. Supreme Court and U.S. Constitution.
10. Mr. Wang had filed a law suit against Whiting regarding the medical malpractice at Whiting occurred to him (**3:16-cv-1207-AVC**). And the U.S. District court had accepted the Complaint in January 2017. *Obviously,*

*Whiting has NOT changed a bit.* Dr. Victoria Dreisbach, a psychiatrist at CVH, has continued to use unnecessary medicine to drug and sedate patients including Mr. Wang to harm the patients and compromise their physical health and mental health, which had resulted in the death and injuries of patients. A lawsuit against Dr. Dreisbach is needed in order to stop her medical malpractice at CVH. She is 21st Century Version of Nazi Doctor "Joseph Mengel"!

## II. PLAINTIFF

11. Plaintiff, **LISHAN WANG**, is and was at all times mentioned herein a prisoner ("un-sentenced") of the State of Connecticut in the custody of the Connecticut Department of Corrections (DOC). From September 2010 to February 2011 and from April 6th, 2015 to present he has been sent to Whiting Forensic Institute (Whiting), Connecticut Valley Hospital for evaluation of "incompetency to stand trial" and thus considered a "patient". He is currently confined involuntarily in Whiting Forensic Institute, 70 O'Brien Drive, Middletown, Connecticut. Zip code 06457. (**NOTE**: Plaintiff may be moved back to the Connecticut State Department of Correction if he is to be found competent to stand trial after the filing of this case. Please kindly contact Attorney **Thomas Ullmann**, Tel: 1-203-6816, at the Office of Public Defender, New Have Superior Court, if the U.S. Court can NOT reach Mr. Wang at the above-mentioned address.)

## III. DEFENDANTS

12. Defendant, **MIRIAM DELPHIN-RITTMON**, is the Commissioner of the State of Connecticut Department of Mental Health & Addiction Services (MHAS, or DMHAS). He is legally responsible for the overall operation of the MHAS and Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "*learned helplessness*", *"Irresponsibility", "immorality", and "arbitrariness"* into a patient's mind. Mailing address: MHAS, 410 Capitol Avenue, P.O. Box 341431, Hartford, CT 06134.
13. Defendant, **HELENE VARTELAS**, is the Chief Executive Officer (CEO) of Connecticut Valley Hospital (CVH). She is legally responsible for the overall operation of CVH and Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "*Learned Helplessness*", *"Irresponsibility", "immorality", and "arbitrariness"* into a patient's mind. Mailing address: CVH, P.O. Box 351, Silver Street, Middletown, CT 06457-7023.
14. Defendant, **THOMAS WARD-MCKINLAY**, is the Director of Whiting Forensic Institute (Whiting) at Connecticut Valley Hospital (CVH). He is legally responsible for the grievance and complaints submitted to him, and overall operation of Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "*learned helplessness*", *"Irresponsibility", "immorality", and "arbitrariness"*, into a patient's mind. Mailing address: Whiting Forensic Institute, 70 O'Brien Drive, Middletown, CT 06457. *Or CVH, P.O. Box 351, Silver Street, Middletown, CT 06457-7023.*

15. Defendant, **FRANK VALDEZ**, is the Director of Unit Two (2) of Whiting Forensic Institute (Whiting) at Connecticut Valley Hospital (CVH). He is legally responsible for the grievance and complaints submitted to him, and overall operation of Unit Two (2) of Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "***learned helplessness", "Irresponsibility", "immorality", and "arbitrariness"*** into a patient's mind. Frank is a member of Mr. Wang's so-called treatment team. <u>Mailing address</u>: Whiting Forensic Institute, 70 O'Brien Drive, Middletown, CT 06457. *Or CVH, P.O. Box 351, Silver Street, Middletown, CT 06457-7023.*
16. Defendant, <u>Dr. Victoria Dreisbach</u>, PSYCHIATRIST, is a Psychiatrist at Whiting Forensic Institute (Whiting) of Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "***learned helplessness***", "***Irresponsibility***", "***immorality***", ***and*** "***arbitrariness***" into a patient's mind by mental torture and psychological warfare. She is legally responsible for truthfully evaluating a patient's medical condition based on the evidence and treating the patient only when the signs and symptoms indicated. She is subject to regulation of the medical ethics ("<u>DO NO HARM</u>") in her clinical practice and the law for her testimony at court. <u>Mailing address</u>: CVH, P.O. Box 351, Silver Street, Middletown, CT 06457-7023.
17. Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law and federal law.

## FACTS

### DR. VICTORIA DREISBACH'S MEDICAL MALPRACTICE AND HER MISTREATING AND DELIBERATE HARMING TO THE PLAINTIFF

18. The Plaintiff (or Mr. Wang) is facing serious charges at New Haven Superior Court (or the trial court) for nearly seven (7) years. He is competent to stand trial. However, from September 2010 to February 2011, he had been sent to Whiting Forensic Institute (or Whiting) of Connecticut Valley Hospital (or CVH) for assessment of "competency to stand trial". Not only was he found competent to stand trial in February 2011, but also was found competent to represent himself at court on December 14, 2011. He had been effectively conducting evidence-based discovery in preparation for defending his innocence beyond a reasonable doubt.
19. However, in late January 2015, the public defender at the trial court had filed a motion to terminate Mr. Wang's "*pro se*" (*self-representation*) right. The trial court Judge Hon. Judge Thomas O'Keefe, Jr. had further ruled on April 6th, 2015 that Mr. Wang was "incompetent to stand trial" again. On September 14, 2015 at a hearing, the psychiatrists and psychologists at Whiting had knowingly misdiagnosed Mr. Wang's mental health and asserted that Mr. Wang was "incompetent to stand trial" and had even recommended forced medication on Mr. Wang against his will based on the wrong diagnosis. (**Exhibit A:** <u>Dr. Cotterell's Sept. 10, 2015 Report</u>)
20. Mr. Wang had appealed his case of misdiagnosis and wrongful forced medication to the Connecticut Supreme Court (CTSC) to overturn the trial court's false order of the forced medication. Because of his "being incompetent to stand trial", Mr. Wang is represented by the Public Defender (PD) at the trial court and at CTSC. Instead of challenging the correctness of the diagnosis of Mr. Wang's mental health, the PD, Atty. Mark Rademacher who was representing Mr. Wang at CTSC, had argued the effectiveness of efficacy of the

recommended medicines, Olanzapine and/or Zipprasidone, in restoring Mr. Wang's "competency to stand trial". (**Exhibit B:** The media coverage about Atty. Rademacher's defense at CTSC.) As can be expected, Mr. Wang had lost the appeal at CTSC. Mr. Wang had subsequently appealed to the U.S. Supreme Court (USSC), but still had been represented by the same PD with the same "stupid" argument. Without surprise, USSC had refused to review the case.

21. Mr. Wang had lost the appeal, because the public defender (PD) had refused to question the correctness of the diagnosis and to protect Mr. Wang's constitutional right to a second opinion of his mental health from a qualified defense expert. (**Exhibit C:** Hon. Judge O'Keefe January 21, 2016's Brief to CTSC.)

22. Mr. Wang is competent to stand trial all the time(**Exhibit D:** Media coverage about Mr. Wang's competency) and does NOT have any typical sign or symptom which could justify the use of psychotropic medicine recommended by Dr. Cotterell, Dr. Hauser and other state employees at Whiting.

23. It's inappropriate to let the PD represent Mr. Wang, because there is a conflict of interests between the PD and Mr. Wang. It's PD who had opposed Mr. Wang's use of the PD's fund in his preparation for his own defense. It's the PD who had asked the court to take away Mr. Wang's "pre se" right. It's the PD who had refused to ask a second opinion of Mr. Wang's mental health from a qualified Defense Expert. It's the PD who had chosen the less important point, the drug efficacy, on appeals at both CTSC and USSC. The ineffective counseling is so obvious. It's the PD who had masterminded, choreographed, and/or conspired the scandal and fraud of the wrong diagnosis of Mr. Wang's mental health.

24. Dr. Cotterell had recommended the use of two psychotropic medicines, Olanzapine (Zyprexa) and Zipprasidon (Geodon), to treat Mr. Wang's so-called "mental illness" in order to restore his "competency to stand trial." At the trial court hearings, the court had only granted the use of the above-mentioned two (2) medicines. It's the understanding of ALL relevant parties in Mr. Wang's criminal case that the doctors or other healthcare workers at Whiting need to obtain a permit, consent or approval from the court if they need to give Mr. Wang a medicine other than those two (*Zyprexa and zipprasidone*) which had been approved by the court. And due to the side-effects of those two medicines, Mr. Wang would be placed under "continue observation" (CO) around the clock to protect him from being injured or harmed by the fall. The fall risk is significant from most psychotropic medicines.

25. On March 8, 2017 at a meeting between Mr. Wang and the members of the treatment team (TT), Dr. Cotterell had confirmed that without a court order, any doctor or nurse (including APRN) at Whiting can NOT administer any non-court-approved medicine to Mr. Wang.

26. On or about February 22nd, 2017 (All times and names in this complaint subject to further verification) and February 23rd, 2017, when the forced medication started, Mr. Wang was subdued by a pack of the male state employees at Whiting, carried to the restraint room (Room# 231) and strapped or tied to a bed (At about 2:45PM, Feb. 22nd, 2017). Two doses of the court-ordered medicine Zyprexa had been administered to Mr. Wang by injection (IM) at about 2:45 PM and 9:10PM respectively.

27. Mr. Wang had continuously been restrained or strapped to the bed for nearly ten (10) hours or longer. There was no sign or symptom which could raise a concern about the risk of his posing harm to himself or others.

The fact that he had been strapped to the bed had prevented him from doing anything to others, either harmful or harmless.

28. Hours after the first dose of Zyprexa had been administered to Mr. Wang, he did NOT displaying any sign or symptom of allergy to the medicine.

29. However, the second shift psychiatrist, Dr. Victoria Dreisbach (name subjects to further verification) had prescribed two doses of *Diphenhydramine (Benadryl)* to Mr. Wang. The use of Benadryl did NOT have an approval from the court. Therefore its use on Mr. Wang was "illegal". Because Mr. Wang had tolerated Xyprexa well, there was no sign or symptom of the side effects which could justify the use of Benadryl. And Mr. Wang did NOT ask for Benadryl.

30. When the second shift nurse "Clara" administered the first dose of Benadryl to Mr. Wang, Mr. Wang asked her "Why are you giving me Benadryl?" She answered, "The doctor had ordered it". Clara had given Mr. Wang the name of the doctor (Victoria Dreisbach) who had ordered the Benadryl. When the 3rd shift nurse Judy was giving the 2nd dose of Benadryl to Mr. Wang, Mr. Wang had asked her the same question "Why are giving me Benadryl?" Judy said "It is for the side effects".

31. Obviously, Doctor Victoria Dreisbach, Nurse Clara, and Nurse Judy knew that the administration of Benadryl had NOT been approved by the court and its administration was against Mr. Wang's will.

32. Presumably Dr. Victoria Dreisbach knows very well that there are serious side effects of Benadryl. According to Lexicomp Online "Patient Education", <u>Diphenhydramine (systemic) has following side effects</u>: *1) Very bad dizziness or passing out; 2) change in balance*.

33. There is <u>no</u> court order for Dr. Victoria Dreisbach to give Mr. Wang a shot of Benadryl. Dr. Victoria Dreisbach had given Mr. Wang two shots of Benadryl in a short period of time, demonstrating Dr. Victoria Dreisbach's malice in harming Mr. Wang. Dr. Victoria Dreisbach had committed *Reckless Endangerment* in harming Mr. Wang; she had also committed *criminal negligence* and *brutality to a patient* in harming Mr. Wang when the side effects of Benadryl had actually caused Mr. Wang passing out at the bathroom, with his nasal bone fractured which required four (4) stitches. As being mentioned above, Mr. Wang did NOT display any sign or symptoms indicating he had allergy or intolerance to Xyprexa on both February 22nd, 2017 and 23rd, 2017. Therefore, there is no evidence indicating Mr. Wang needed Benadryl for the so-called "side effects". Dr. Victoria Dreisbach gave Mr. Wang Benadryl with a motive to do harm to Mr. Wang.

34. As having pointed out in the case against Whiting (Case No. 3:16-cv-1207-AVC), whiting is notorious of harming patients or compromising patients' physiological function with medicines. The harms include Risk of Fall and Death of patient. Whiting and its physicians have been continuing such medical malpractice daily for a very long time.

35. On December 12, 2016, in an article, *Hartford Courant* reports that physicians or psychiatrists at DMHAS at CVH do NOT have to be "board certified", do NOT have to disclose the disciplinary actions taken against them, can practice after-hour in their private practices as a full-time CVH employees, and have been paid a quarter of million dollars a year at CVH with tax moneys. **This indicates that there is an issue of physicians' competence and ethics at CVH.** **Dr. Burger** (name subject to further verification), a female psychiatrist at Unit 4 of Whiting who has never seen Mr. Wang or talked to him, had allegedly told a patient James Ward that she

wishes Mr. Wang "will be medicated." <u>*Such unprofessionalism, immorality, patient abuse, and possible criminal act at Whiting know no boundary.*</u> When a patient at Unit 4 Andrew Vermig(g)lio died on December 2, 2016, allegedly Dr. Burger had "masterminded" to lie that the patient had died "on his way to hospital when EMS arriving at Middlesex Hospital", while, allegedly the patient was, in fact, all blue and died at Unit 4.

36. On October 6, 2016, Dr. Cotterell had testified at New Haven Superior Court that the protocol for patient care and forced medication is safe for the patient, because the patient would be under 1 on 1 or 2 on 1 observation 24 hours a day 7days a week. The death of Patient Andrew Vermigglio (in his 20's, name subject to further verification) at Unit 4, Whiting Forensic Institute, CVH on December 2, 2016 proves that at Whiting there exists both potential and actual unnecessary medication, criminal negligence, foul play, deliberate indifference to a patient medical need, and/or institutional incompetency of Whiting as a medical facility. It also proves whatever Dr. Cotterell said at New Haven Superior Court on October 6, 2016 about the patient safety at Whiting are subject to further questioning, another piece of evidence to substantiate that Dr. Cotterell has credibility problem in his testimonies about Mr. Wang's mental health and behaviors in his September 10, 2015 Report. A patient named Tyler Metcalf at Unit 2 had passed out twice in about two weeks and had sustained head injuries which required 12 stitches. Both patients were under 1 on 1 or 2 on 1 observation 24 hours a day 7days a week. Facts speak louder than Dr. Cotterell's "testimonies". The incidents at Unit 4 and Unit 2 prove that Mr. Wang's Complaint is NOT "crying wolf", and what he has claimed are true that the medical malpractices and patient abuses are serious and a "death or life" matter.

37. Dr. Victoria Dreisbach's malpractice proves that there is a problem of patient safety at Whiting, and Dr. Cotterell's testimony at court about patient safety at Whiting is questionable. The only plausible reason for Dr. Victoria Dreisbach to **_drug_** Mr. Wang with the drug Benadryl was/is to cause harm. Unethical, malicious and dishonest physicians at Whiting are good at poisoning the patients with the side effects of the medicines. Mr. Wang is neither the first one nor the last one to have passed out due to the side effects of the medicines. The side effects of passing out and loss of balance are what the doctors have intended to cause them to happen to the patients.

38. At midnight of February 22nd, 2017 and the wee hours of February 23rd, 2017, the "straps" had been removed from Mr. Wang's limbs. Mr. Wang asked to go to the bathroom to take a leak. His gaits were unsteady, imbalanced due to the side effects of Benadryl. He was very drowsy, but he still had to go to the bathroom for urination.

39. At the moment he was finishing urination, he had passed out, lost his consciousness, and as a result collapsed to the floor inside the bathroom. His nose had hit the urination utensil and was fractured. When he regained his consciousness, he found himself lying down on the floor with the blood gushing out from his nose. However, he was so drowsy and imbalanced that he became very weak and could only lay on the floor with his face facing the floor.

40. Whiting had sent Mr. Wang to Middlesex hospital for treatment. He had received four (4) stitches for the wound on his nose. CT Scan showed Mr. Wang has nasal bone fracture. The doctor who stitched Mr. Wang's wound had asked a Whiting staff member William Fernandez (or Fat Will) whether or NOT Mr. Wang "is aggressive". Fat Will had told him that Mr. Wang "is verbally aggressive, but NOT physically aggressive."

41. Fat Will's words proved that Mr. Wang is a peaceful person posing no harm to himself or others including the state employees. This further substantiates that the two injections of Benadryl to Mr. Wang was unnecessary, unethical, illegal, and Dr. Victoria Dreisbach & Whiting had committed criminal negligence, reckless endangerment, and medical atrocity to Mr. Wang with malice to cause harm to Mr. Wang's health.

42. As having been pointed out in the civil case 3:16-cv-1207-AVC, physicians and other healthcare workers at Whiting are notorious for being deliberately indifferent to their patients' needs. The state employees have repeatedly committed criminal negligence with malicious intent to cause harm to their patients. In December 2016, a young patient at Unit 4 died because of "choking". In November 2016, another patient at Unit 2 had twice fallen to the floor and needed 12 stitches for the wound on his head. Now it is Mr. Wang who had passed out and fallen to the floor with broken nose. Many times, Mr. Wang had witnessed patients' falls after they were medicated. This proves that Dr. Dreisbach and other doctors at Whiting are modern day Nazi doctor "Joseph Mengel". They mistreat patients on routine basis as if the patients were guinea pigs.

43. As being stated in the legal claims in the Complaint (**3:16-cv-1207-AVC**), that Complaint is mainly about: **A**. Medical malpractice at Whiting regarding Mr. Wang's mental health and patient care; **B**. wrong diagnosis made deliberately about Mr. Wang's mental health committed by the doctors at Whiting; **C**. unnecessary and unethical forced medication prescribed by the doctors at Whiting based on the wrong diagnosis; **D**. using wrong diagnosis of Mr. Wang's mental health to cover up racism, bias, discrimination, and abuse occurred at Whiting and using forced medication to shut him up; **E.** Deliberate indifference to Mr. Wang's medical need. **F.** Intentional infliction of emotional distress.

44. However, this new Complaint is specifically against Dr. **Victoria Dreisbach** because she had used medicine for doing harm to the patient, the Plaintiff Mr. Wang.

### Defendant, MIRIAM DELPHIN-RITTMON

45. Defendant, **MIRIAM DELPHIN-RITTMON**, is the Commissioner of the State of Connecticut Department of Mental Health & Addiction Services (MHAS, or DMHAS). He is legally responsible for the overall operation of the MHAS and Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "*learned helplessness*" into a patient's mind. *Mr. Wang had sent Grievances to the Commissioner. Therefore, the Commissioner knew the misconducts of the state employees at Whiting and she is responsible for the continuing abuses and the cover-ups of the abuses at Whiting*.

46. Mr. Wang has sent many letters and numerous motions to Connecticut Attorney General Office (AGO), CVH CEO, DMHAS and its Commissioner, Dr. Ward-McKinlay, New Haven Superior Court, and other institutions regarding the medical malpractice, wrong diagnosis and unnecessary forced medication occurred to him. The relevant defendants know the problems and they are legally responsible for the criminal activities occurred at Whiting.

### Defendant HELENE VARTELAS

47. Defendant, <u>HELENE VARTELAS</u>, is the Chief Executive Officer (CEO) of Connecticut Valley Hospital (CVH). She (Helene is a SHE!) is legally responsible for the overall operation of CVH and Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "*learned helplessness*" into a patient's mind. Mr. Wang had sent Grievance to CEO Helene Vartelas at CVH. Therefore, the CEO knew the misconducts of the state employees at Whiting and he or **she** is responsible for the continuing abuses and the cover-ups of the abuses at Whiting.

## Defendant THOMAS WARD-MCKINLAY

48. Defendant, **THOMAS WARD-MCKINLAY**, is the Director of Whiting Forensic Institute (Whiting) at Connecticut Valley Hospital (CVH). He is legally responsible for the grievance and complaints submitted to him, and overall operation of Whiting Forensic Institute at Connecticut Valley Hospital (CVH) with an obvious mission to inculcate "*learned helplessness*" into a patient's mind. Mr. Wang had sent Grievances to Dr. **THOMAS WARD-MCKINLAY** at CVH. Therefore, **THOMAS WARD-MCKINLAY** knew the misconducts of the state employees at Whiting and he is responsible for the continuing abuses and the cover-ups of the abuses at Whiting.

## EXHAUSTION OF LEGAL REMEDIES

49. Mr. Wang had filed a lawsuit (Case# 3:16-cv-1207-AVC) about medical malpractice at Whiting. What Dr. Dreisbach had done to Mr. Wang proves that Whiting has NOT changed in its medical malpractice. *Action antagonizes them; inaction encourages them*. The pending case (Case# 3:16-cv-1207-AVC) does NOT bring change at Whiting. The medical malpractice at Whiting is recalcitrant and pervasive.

50. Mr. Wang had filed motions to New Haven Superior Court asking the court to stop Dr. Dreisbach and other healthcare workers from mistreating Mr. Wang.

51. Mr. Wang has also contacted Chinese Embassy at DC and General Consulate in New York desperately seeking protection from Chinese government in order to stop medical malpractice at Whiting which is harming Mr. Wang with unnecessary court-approved medication and unauthorized medicines. Every year, Chinese Government has published Annual Reports on U.S. Violation of Human Rights. It has mentioned mass incarceration in America as evidence of U.S. notorious violation of minorities' human rights.

52. As having been pointed out in Mr. Wang's civil lawsuit against Whiting (Case# 3:16-cv-1207-AVC), physicians and other healthcare workers are capable to made up untruthful medical records about the patients in order to justify their abuses and medical malpractice, especially when it comes to forced medication and unwanted medication on patients against the patients' will.

53. Mr. Wang had also contacted the Client Rights Officer at CVH regarding Dr. Dreisbach's mistreating Mr. Wang.

## LEGAL CLAIMS

54. Plaintiff re-alleges and incorporates by reference paragraphs <u>1-53.</u>

55. *<u>Mr. Wang is a non-violent, good man and law-abiding citizen, as being indicated in many examples mentioned in the complaint 3:16-cv-1207-AVC.</u>* He follows the rules at DOC and Whiting. He had advised patient Nick

Benner NOT to attack Sandra. He had told Nurse Heather that there was a bottle of bleach neglected at the bathroom. He had courage to break the fight between the patients. However, he had been treated differently with different standards, abused and bullied by the state employees including police officers out of their racism and racial profiling. Many times he had been punished by the state employees for their assuming Mr. Wang was going to do something while he was NOT or for something he did NOT do.

56. *To knowingly misdiagnose Mr. Wang's mental health is a medical malpractice and a possible crime*. It's a violation of Mr. Wang's 8th Amendment Right. To knowingly medicate Mr. Wang based on the wrong diagnosis of Mr. Wang's mental health is a medical malpractice and a possible crime. It's a violation of Mr. Wang's 8th Amendment Right. To knowingly use the wrong diagnosis and unnecessary forced medication constitutes waging "mental torture", "psychological warfare", and "terrorism" on Mr. Wang, an un-sentenced "accused" who is assumed "innocent until proven guilty". It's a violation of Mr. Wang's 8th Amendment Right and his basic human rights. The racial profiling, abuses and deliberate indifference to Mr. Wang's medical needs at Whiting are the acts of racism, discrimination, and a violation of Mr. Wang's 8th Amendment Right. *Using Benadryl to compromise Mr. Wang and cause him passing out is a violation of Mr. Wang 8th Amendment Right. It is a violation of the ethical code of physicians "Do No Harm".*

57. The State of Connecticut also has a notorious dark history of using prisoners for medical experiments with Hepatitis Virus by Yale professors. The wrong diagnosis of Mr. Wang's mental health and the wrongful forced medication is likely a schemed medical experiment.

58. The American Civil Liberties Union (ACLU) had sued two former Air Force psychiatrists who designed a CIA program that used harsh interrogation techniques to elicit intelligence from suspected terrorists, saying the pair endorsed and taught torture tactics under the guise of science. Similarly, using mental torture, psychological warfare, wrong diagnosis, and the terror of forced medication is illegal or "extremely cruel" to Mr. Wang who is innocent until proven guilty. *Dr. Dreisbach used Benadryl on Mr. Wang without approval from the court and without consent from Mr. Wang. There is no sign or symptom on Mr. Wang which could justify the use of Benadryl. The healthcare workers at Whiting had NOT "educated" Mr. Wang about the serious side effects of Benadryl. They had committed criminal negligence.* Using medicine for harm is a crime.

59. The recommendation of "forced medication" on Mr. Wang (who is not violent)against his will (case# 3:16-cv-1207-AVC) suggests that not only were the psychiatrists and psychologists from Yale University and Whiting lack of insight about Mr. Wang's mental health, but also lack of insight about what is good to Mr. Wang's mental health. As being mentioned in case# 3:16-cv-1207-AVC, Mr. Wang's court-appointed health care advocate (HCA), Nurse Sicilia Gail, had testified at New Haven Superior Court in late 2015 that "hopefully with medication he (Mr. Wang) could forget the past and move on in his life." It's obvious that one of the major goals for forced medication is to change, erase, and/or disrupt Mr. Wang's memory about the past. Even though Mr. Wang's past experiences at Kingsbrook Jewish Medical Center (or KJMC) in Brooklyn, New York and Dr. Alan C. Yao's Clinic were terrible, painful, and traumatic, he insisted that he had done nothing wrong at KJMC and had filed a civil lawsuit [**CASE NO. 1:09-cv-03236-JG-SMG, Lishan Wang, M.D. (Plaintiff) v. Kingsbrook Jewish Medical Center (KJMC)**]at U.S. Eastern New York District Court claiming KJMC had falsely accused him of threatening Dr. Toor's safety and KJMC had used untruthful testimonies to defame him

and wrongfully terminated his hard-earned position as a training doctor. He was and is a victim and punching bag of both KJMC and Dr. Alan C. Yao's frauds and crimes. Backward-looking experiences can arm Mr. Wang for future in defending himself against all those meritless charges against him from KJMC and the State of Connecticut. Nostalgia of himself as a hard-working and compassionate physician and scientist could foster feelings of connection and re-enforce inspiration of being caring with integrity. Such self-continuity is essential for Mr. Wang to boost energy and vitality to fight both past and present prejudices and injustices against him. His being right and always doing the right things consistently as a law-abiding citizen would make him become optimistic again and get over from the depression he had suffered from being wrongfully terminated by KJMC in mid-2008. Not only nostalgia can enhance Mr. Wang's confidence in his social ability, but also assure he will be strengthened and get past the devastating experiences he has sustained in past and currently. Chemical lobotomy or forced medication is wrong in the first place because in Mr. Wang's case it is based on the wrong diagnosis; it is also detrimental because it will destroy Mr. Wang's memory, the divine faculty given to every human being from God, which is critical and essential to preserving Mr. Wang's unique identity.

60. As being mentioned in case# 3:16-cv-1207-AVC, there is no money can literally compensate the loss and damage from which Mr. Wang has suffered in last ten years. His career, family, and reputation had been destroyed by KJMC. And Dr. Cotterell and the State of Connecticut have further cast stone at him by the wrong diagnosis and the prescription of forced medication. Every year tens of thousands of people in U.S. have died from opioid overdose. The journey to death for the majority of the opioid victims started from the prescribed opioid drugs (**Exhibit E**). In 2006, when Mr. Wang practiced evidence-based medicine and did NOT give opioid drug to a patient immediately as she requested, he had been "belittled, humiliated, bullied, intimidated, and abused" by a pain doctor Dr. Hinke (**Exhibit E**). KJMC had even labeled him "being emotional". Mr. Wang had refused to make apology to Dr. Hinke or the patient and stood up to the medical malpractices at KJMC. If the doctors in U.S. care about their patients in the same way as Mr. Wang did in 2006, how many lives could have been saved? Courage is NOT doing what is right cheered by others. Courage is doing what is right booed by others. Americans can NOT accept that a Chinese can do the right thing for them, even to the point of sacrificing his career and family. Worse, Americans need to demonize, defame, denigrate, and criminalize the very Chinese who had insisted on doing the right things for them. This Chinese is the Plaintiff.

## PRAYER FOR RELIEF

61. WHEREFORE, Plaintiff respectfully prays that this court enters judgment granting plaintiff:
62. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.
63. A preliminary and permanent injunction ordering the defendants to stop abusing and harassing the plaintiff physically, verbally, and emotionally, to stop mental torture and psychological warfare, and to stop discriminating against the plaintiff. The stigma to Mr. Wang's family and children is beyond monetary repair.

64. Compensatory damages against each defendant, jointly and severally. Using Sport Reporter Erin Andrew and the Reality Show Star Mr. Hogan as case laws, Mr. Wang respectfully asks the court to order Whiting to pay Mr. Wang both compensatory damage and punitive damages in $1.00 million.
65. Punitive damages against each defendant.
66. A jury trial on all issues triable by jury.
67. Plaintiff's cost in this court
68. Any additional relief this court deems just, proper, and equitable.

DATED: April 6th, 2017

RESPECTFULLY SUBMITTED,

_____

LISHAN WANG, Plaintiff at Unit 2, Whiting Forensic Institutes, CVH, 70 O'Brien Drive, Middletown, CT 06475


## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct. Executed at Unit 2, Whiting Forensic Institutes, CVH, 70 O'Brien Drive, Middletown, CT 06475 on April 6th, 2017.

SIGNATUE: _____
LISHAN WANG