P1 / 24

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

Document: __

| | | |
|---|---|---|
| LISHAN WANG, | : | |
| Plaintiff | : | **COMPLAINT CIVIL** |
| | : | |
| **V.** | : | **ACTION NO. 3:17-CV-00586-AVC** |
| | : | |
| **MIRIAM DELPHIN-RITTMON,** | : | **DATE: OCTOBER** 28, 2020 |
| **HELENE VARTELAS,** | : | |
| **THOMAS WARD-MCKINLAY** | : | |
| **VICTORIA DREISBACH,** | : | |
| **DIANA KURLYANDCHIK,** | : | |
| **MISTY DELCIAMPO,** | : | |
| **CLARA MEJIAS,** | : | |
| **JUDY HALL,** | : | |
| **HEATHER MADISON,** | : | |
| Defendants | : | |

SCANNE.. .t ⋯⋯
and Emailed
⋯⋯⋯ ⋯ ⋯ ‾‾pages
date    initials   No.

Revised **AMENDED    COMPLAINT** (Revised via Dkt# 124)

### I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. On April 6th 2017, plaintiff had filed the initial Complaint (Dkt# 1) which has stated clearly the Jurisdiction & venue. On 09/23/19, based on the results of the discovery and plaintiff's motions for amendment, the court has ordered (Dkt# 100) that Plaintiff may file an amended complaint that includes the 14th Amendment due process claim against Dr. Dreisbach and nurses Mejias and Hall for their failure to secure a court order to involuntarily medicate him with Benadryl or to provide him with sufficient information to enable him to make an informed decision about the recommendation that he be given injections of

Page 2 of 24                                                    Dkt# _____

Benadryl; the 14th  Amendment due process claim against Commi-
ssioner Delphin-Rittmon and Directors Vartelas and Ward-McKinlay
for their failure to take action after being informed of the vio-
lations of plaintiff's due process rights by Dr. Dreisbach; and
the 14th Amendment unreasonable/excessive force claim against
nurses Mejias, Madison, and Delciampo and Drs. Kurlyandchik and
Dreisbach pertaining to their statements or decisions that result-
ed in plaintiff's continued confinement in restraints for ten(10)
hours, even though he was not engaging in violent or threatening
conduct. On 9/25/20. Court ordered plaintiff to resubmit a brief,
relevant  Amended Complaint (Dkt# 124)

## II.  PLAINTIFF

2.  Plaintiff, LISHAN WANG, is and was at all times mentioned herein
a prisoner of the State of Connecticut in the custody of the Con-
necticut Department of Corrections (DOC). From 9/2010 to 2/2011
and from 4/6/2015 to 9/22/2017 he was a patient at Whiting Foren-
sic Institute (Whiting), Connecticut Valley Hospital (CVH) for
evaluation of "incompetency to stand trial" and "restoration of
the competency". This lawsuit arose from the violations of his
constitutional rights during his stay at Whiting when he was an
"unsentenced inmate". His current address: #375805,  MacDougall-Walker
Correctional Institute, 1153 East Street South,     Suffield, CT 06080

## III.  DEFENDANTS

3.  Defendant, Miriam Delphin-Rittmon, is the Commissioner of the
State of Connecticut Department of Mental Health & Addiction
Services (DMHAS). He is legally responsible for the overall
operation of DMHAS and Whiting, CVH. Mailing address: DMHAS,
410  Capitol Avenue, P.O. Box 341431, Hartford, CT o6134.

Dkt#

4. Defendant, Helene Vartelas, is the Chief Executive Officer (CEO) of CVH. She is legally responsible for the overall operation of CVH and Whiting. Mailing address: CVH, P.O.Box 351, Silver Street Middletown, CT 06457-7023.

5. Defendant, Thomas Ward-McKinlay, is theDirector of Whiting. He is legally responsible for the overall operation of Whiting and the grievance and complaints submitted to him. Mailing Address: Whiting Forensic Institute, 70 O'Brien Drive, Middletown, CT 06457; Or, CVH, P.O.Box 351, Silver Street, Middletown, CT 06457.

6. Defendant, Victoria Dreisbach, is a psychiatrist at Whiting. She is responsible for truthfully evaluating a patient's medical and mental condition  and treating the patient only when the signs and symptoms indicated. She is subjected to regulation of the medical ethics (such as "DO NO HARM") in her clinical practice and the law for her testimony at court. Mailing address: CVH, P.O.Box 351, Silver Street, Middletown, CT 06457-7023.

7. Defendant, Diana Kurlyandchik, is the psychiatrist at Unit 2, Whiting Forensic Institute durig the time this complaint arises. She is legally responsible for being truthful and making honest diagnosis of the patients at Unit 2, practices evidence-based medicine, and does no harm to patients. She was Mr.Wang's attending psychiatrist from mid-2016 to the end of Mr. Wang's stay at Whiting (9/22/2017). Mailing address: 70 O'Brien Drive, Middletown, CT 06457. Or, CVH, P.O.Box 351, Silver Street, Middletown, CT 06457-7023.

8. Defendant, Misty Delciampo, is a registered nurse at Unit 2,Whiting during Mr. Wang's stay there. She had been assigned to treating Mr. Wang with individual meetings and other cognitive behavior therapy. She is bound to medical ethics "DO NO Harm" in her

Page 4

clinical practice and being truthful in documenting a patinet's condition  and performance in medical records. Mailing address: CVH, P.O.Box 351, Silver Street, Middletown, CT 06457-7023. (According to Defendants' counsel, Ms. Delciampo had left Whiting and the court papers for her need to be sent to Defendants' legal counsel at Attorney General Office: Attorney Mary K. Lenehan, 55 Elm Street, P.O.Box 120, Hartford, CT 06141-0120.)

9. Defendant, Clara Mejias, is a registered nurse (RN) at Unit 2, Whiting during Mr. Wang's stay there from 2015 to 2017. She is bound to medical ethics "DO NO HARM" in her clinical practice and being truthful in documenting patients' condition  and perfor- mance in medical records. Mailing address: Whiting Forensic Hos- pital, 70 O'Brien Drive, Middletown, CT 06457. Or, CVH, P.O.Box 351, Silver Street, Middletown, CT 06457-7023.

10. Defendant, Judy/Jude Hall, is an RN at Unit 2, Whiting during Mr. Wang's stay there (2015-2017). Her first name is either JUDY or JUDE. She is bound to medical ethics "DO NO HARM" in her clinical practice and being truthful in documenting a patient's condition and performance in medical records. Mailing address: 70 O'Brien Drive, Middletown, CT 06457. Or, CVH, P.O. Box 351, Silver Street Middletown, CT 06457-7023.

11. Defendant, Heather Madison, is an RN at Unit 2, Whitingduring Mr. Wang's stay there (2010-2011, 2015-2017). She had been assigned to treating Mr. Wang with individual meetings and other cognitive behavior therpy. She is bound to medical ethics "DO NO HARM" in her clinical practice and being truthful in documenting a patient 's conditions and performance in medical records. Mailing Address: 70 O'Brien Drive, Middletown, CT 06457. Or, CVH, P.O.Box 351, Silver street, Middletown, CT 06457-7023.

Page 5

12. Each defendant is sued individually and in his or her individual capacity. At all times mentioned in this complaint each defendant acted under the color of state law and federal law, as being mentioned in the original Complaint (Dkt# 1).

## IV.  FACTS

13. AS being described in the initial Complaint (Dkt# 1), Motion to add more defendants (Dkt# 51), and motion to add more charges and defendants (Dkt# 79), Mr. Wang was wrongfully found "incompetent to stand trial" on April 6th, 2015 and sent to Whiting for further "assessment" and "restoration". On September 14, 2015, Dr.Mark Cotterell and his colleagues at Whiting had knowingly misdiagnosed Mr. Wang's mental health and asserted at New Haven Superior Court that Mr. Wang was "incompetent to stand trial" and needed to be medicated becuase of "unspecified schizophrenia". Mr. Wang had appealed his case of misdiagnosis to the COnnecticut Supreme Court and U.S. Supreme Court, asking for a second opinion about his mental health from his own psychiatrist. However, his court-appointed public defenders had refused to uphold his legal right to a second opinion at the Suprior court and did NOT argue this right on the appeal. As can be expected, Mr. Wang had lost the appeal at Connecticut Supreme Court; and U.S. Supreme Court had refused to review his case. New Have Superior Court thus had ordered to start forced medication of Olanzapine (Zyprexa) on 2/22/2017 in order to "restore" Mr. Wang's "competency to stand trial".

14. Dr. Cotterell had recommended the use of two psychotropic medicines, Olanzapine (Zyprexa) and Zipprasidon (Geodon), to treat Mr. Wang's so-called "mental illness". It's the understanding of ALL

Page 6

relevant parties in Mr. Wang's criminal case that the doctors or
other healthcare workers at Whiting, CVH need to obtain a permit,
consent or approval from the court if they need to give Mr. Wang
a medicine other than those two (Zyprexa or Geodon) approved by
the court. And due to the side effects of those two court-approv-
ed medicines, Mr. Wang needed to be placed under "continuous
observation" (CO) around the clock to protect him from being in-
jured or harmed by fall. The fall risk is significant from most
psychotropic medicines due to their effects on central nervous
system (CNS) and cardiovascular system.

15. On March 8, 2017 at a meeting between Mr. Wang and the members of
the treatment team (TT), Dr. Cotterell had confirmed that without
a court order, any doctor or nurse (including APRN) at Whiting or
CVH can NOT administer any non-court-approved medicine to Mr.Wang.

16. On February 22nd, 2017 (All times and names in this complaint sub-
ject to further verification) at about 2:30PM, Mr. Wang was call-
ed from the courtyard by Unit 2 manager Frank Valdez to go back
into the Building Unit 2 at Whiting for forced medication. Mr.
Wang asked to go back to his dorm to put his eyeglasses in his
closet. Then he emerged from his dorm telling Mr. Valdez and
many male employees (up to ten, or more) in the hallway that"You
all know I do not need medication". Mr. Valdez asked Mr. Wang to
go to the "treatment room" on the other end of Unit 2 Building.
Mr. Wang refused, telling them:"You need to carry me over there."
A few male employees had started to grab Mr. Wang's arms, legs,
and other parts of his body. Mr. Wang remembers staff William
Fernandez and Steve Palenski were among them and Mr. Palenski
had grabbed one of Mr. Wang's leg. The leg was stuck between
Mr. Palenski's legs. Mr. Wang had said to Mr. Palenski, "Steve,

this is not personal". Mr. Palenski said, "I know" and gradually
moved Mr. Wang's leg out of his legs. Mr. Wang had just stiffed
his body and had NEVER pushed, kicked, grabbed, scratched, or hit
anyone when he was being controlled and carried by those male em-
ployees.He had NOT spit at them or uttered  profanity to them.
They carried him to the Restraint Room (Room #231) and strapped
him    to a bed. During the strapping and after being in 4-point
restraint, staff William Fernadez (Fat Will) had used his elbow
to squeeze Mr.Wang's jaw so hard that Mr. Wang yelled at him "You
are cracking my teeth!" Mr. Wang remembered RN Timothy Murphy was
present in the restraint room, too. Up to this point, Dr. Diana
Kurlyandchik had NEVER talked to him on 2/22/2017.Because the
nurse who was supposed to do the injection had NOT yet showed up
or been ready after Mr. Wang was 4-point restrained, RN Murphy
said "Fuck it" and probably left the room (He might have come
back or have NOT actually left the room when RN appeared to do
injection.) At about 2:45PM RN Heather Madison showed up and
injected Mr. Wang with first dose of Zyprexa. During the inject-
ion, Mr. Wang had twisted his hips trying to avoid the needle.
There were male employees grabing his legs, thighs, and hips
to stablize Mr. Wang's hips for injection. After RN Madison had
injected the medicine, Mr. Wang was being 4-point restrained
continuously for nearly 10 hours or longer. During the 10-hour
restraint, he was injected with second dose of Zyprexa (at about
9:10PM) and two doses of non-court-approved Benadryl against his
will. Whenever Mr. Wang was talked to, he either said he did NOT
want to talk to them or said that he "did not need medication",
"you need medication", "you know I do not need medication", etc.

Page 8

Mr. Wang had NEVER been violent physically or threatened to harm anyone physically. There was no sign or symptom which could raise a concern about the risk of his posing harm to himself or others. The fact that he had been strapped to the bed had prevented him from doing anything to others, either harmful or harmless.

17. At about 4:00PM, 2/22/2017, Dr. Diana Kurlyandchik showed up for the first time to Mr. Wang and talked to Mr. Wang. Mr. Wang said to her, "I don't need med", "You need medication", "I'm going to sue you", "I've Chinese government behind me", "You crazy", etc. At about 4:30PM, defendant Churlyandchik had come back to talk to Mr. Wang again before she went home for the day.She had talked to Mr. Wang twice (4:00PM and 4:30PM) on 2/22/17. During one of the talks, she told Mr. Wang if he said "I will not harm anyone" she would terminate the 4-point restraint on him. Mr. Wang was silent upon hearing her request; he did NOT want to say it because he had NEVER wanted to harm anyone physically on that day or any other days.In addition, he felt Dr. Kurlyandchik's request was a trap because it would indicate that he had wanted to harm others.

18. Hours after the first dose of Zyprexa had been administered to Mr. Wang, he did NOT display any sign or symptom of allergy to the medicine.

19. However, the second shift psychiatrist, Dr. Victoria Dreisbach had prescribed two doses of Diphenhydramine (Benadryl) to Mr.Wang. The use of Benadryl did NOT have an approval from the court. Therefore its use on Mr. Wang against his will was illegal. When the second shift RN Mejias administered the first dose of Benadryl to Mr. Wang against his will, Mr. Wangasked her "Why are you giving me Benadryl?" She answered, "The doctor had ordered it." Defendant Clara Mejias had given Mr. Wang the name of the doctor

(Victoria Dreisbach) who had ordered the Benadryl. When the 3rd shift nurse Judy (or Jude) Hall was giving the 2nd dose of Benadryl to Mr. Wang, he asked her the same question "Why are you giving me Benadryl?" RN Judy Hall said "It is for the side effects". Obviously, Dr. Dreisbach had NOT told RN Hall about the purpose of using Benadryl to "control" Mr. Wang's behavior (as sedative) in order to "get him off 4-point restraint", as later during the discovery Defendant Dreisbach had falsely alleged that was one of her purposes. When defendant Hall administered the 2nd dose of Benadryl, Mr. Wang had been continuously restrained for about 8 hours, and RN Hall was still telling him Benadryl was used for "the side effects". And Mr. Wang had NOT shown any sign of side effects from Zyprexa at the injection on 2/22/2017.

20. There was no court order for Dr. Dreisbach to give Mr. Wang two shots of Benadryl. Defendants Dreisbach, Mejias, and Hall knew that, and they gave it to him against his will because Mr. Wang had twisted his hips and they had to use force to stablize his hips for injection. Defendant Dreisbach had given Mr. Wang two shots of Benadryl in a short period of time, demonstrating her malice in harming Mr. Wang. Dr. Dreisbach had committed <u>reckless Endangerment</u> in harming Mr. Wang; she had also committed criminal negligence and brutality to a patient in harming Mr. Wang when the side effects of Benadryl, NOT Zyprexa, had actually caused Mr. Wang passing out at the bathroom with his nasal bone fractured which required four stitches and his brain damaged.

21. At midnight of 2/22/2017 and the wee hours of February 23rd, 2017, the straps (4-point restraint) had been removed from Mr. Wang. He asked to go to the bathroom to take a leak. His gaits were unsteady, imbalanced due to the side effects of Benadryl. He was very

Page 10

drowsy, but he still had to go to the bathroom for urination. His blood pressure or cardiovascular fuction might have been compromised, as it is common for Benadryl to cause low blood pressure and patient's passing out. Whiting and its employees had NOT monitored Mr. Wang's vital signs at the moment he was released from the 4-point restraint.

22. At the moment Mr. Wang was finishing urination, he had passed out, lost his consciousness, and as a result collapsed to the floor in the bathroom. His nose had hit the urination utensil and was fractured. When he regained his consciousness, he found himself lying down on the floor with blood gushing out from his nose. However, he was so drowsy and imbalanced that he became very weak and could only lay on the floor with his face facing down. The blood kept gushing out from his nose, covering nearly one square meter of the floor. There was a nurse coming sometime later and trying to help Mr. Wang by pressing his nose. Mr. Wang had worried there might be bone fracture and did NOT want the nurse to press his nose. However, the male nurse (Mr. Wang could NOT tell his race because Mr. Wang was so drowsy) said to Mr. Wang, "You are a doctor and I'm a nurse; you know this is the right thing to do." Mr. Wang couldn't stop him from pressing his nose. Mr. Wang was soaked in his own blood. Eventually, the nurse and others help Mr. Wang lift up and they supported him to move back to the Restraint Room. They removed Mr. Wang's clothes either at the bathroom or at the Restraint Room. During the discovery, defendants are unable to recover the clothes as evidence or to produce a photo picture of the clothes to prove they were bloody. Whiting has also refused to give Plaintiff the name of the nurse and to identify other employees at the scene as eyewitnesses.

23. Whiting had sent Mr. Wang to Middlesex Hospital for treatment. He
had received four (4) stitches for the wound on his nose. CT scan
showed Mr. Wang had nasal bone fracture. The doctor who stitched
Mr. Wang's wound had asked a Whiting staff member William Fernan-
dez (Fat Will) whether or not Mr. Wang "is aggressive". Fat Will
had told him that Mr. Wang "is verbally aggressive, but NOT phy-
sically aggressive." This proves that Mr. Wang had NEVER been
violent or physically threatening on 2/22/2017 because Mr. Fer-
nandez had witnessed the forced medication from the beginning at
2:30PM, during the 4-point restraint, and at least during and
after the injection of the first dose of Zyprexa. This also
proves that Defendants Kurlyandchik, Delciampo, Mejias, Madison,
and Dreisbach had been collectively lying about Mr. Wang's "vio-
lent behaviors" on 2/22/2017 when they ordered continuous 4-point
restraint and two doses of Benadryl for Mr. Wang after the first
dose of Zyprexa.

24. On February 22, 2017, Defendant Diana Kurlyandchik had NEVER seen
or engaged in any talk with Mr. Wang before the 4-point restraint
(at about 2:30PM), had NEVER seen or talked to Mr. Wang during
the 4-point restraint (by 4:00PM), had NEVER talked to Mr. Wang
before the first injection of Zyprexa to Mr. Wang (at about 2:45
PM), and had NEVER talked to Mr. Wang by 4:00PM. And yet, she had
fabricated that she had attempted to talk to Mr. Wang (who refus-
ed) before the 4-point restraint, and had furhter fabricated that
Mr. Wang had threatened to do physical harms to others(Connecti-
cut Valley Hospital Integrated Progress Notes, or IPN, MPI#207130
Patient: Wang, Lishan, 2/22/2017, 4pm & 4:30PM, DKT# 81 Exhibit
One).

25. With her lies against Mr. Wang, Defendant Kurlyandchik had ordered
    continuous 4-point restraint on Mr. Wang after the first inject-
    ion of the court-ordered medicine Zyprexa at about 2:45PM 2/22/17.
    She had ordered continuous 4-point restraint on Mr. Wang after
    4:00PM and 4:30PM, 2/22/2017, dishonestly and malicously alleged
    that Mr. Wang had verbally threatened physical harms to others.
    She had used excessive, unreasonable, and cruel 4-point restraint
    on non-violent Mr. Wang for hours, which later was further extend-
    ed to midnight for more than ten hours. She had violated Mr.Wang'
    s Fourteenth Amendment Right(as an unsentenced prisoner) To false-
    ly accuse Mr. Wang of being violent is libel and defamation
    against Mr. Wang, which had resulted in physical harm to him and
    trauma to his mental health on 2/22/17 and after.

26. Defendant Victoria Dreisbach, in addition of ordering illegal in-
    jections of Benadryl to Mr. Wang, had also ordered continuous 4-
    point restrainton Mr. Wang after 4:30PM on 2/22/2017, which was
    continued into wee hour of 2/23/2017. She had violated Mr.Wang's
    Fourteenth Amendment right by illegally giving him Benadryl and
    cruelly tortured him        by using 10-hour continuous 4-point
    restraint on Mr. Wang. She had also lied against Mr. Wang by
    falsely alleged that Mr. Wang was violent on 2/22/2017 and he was
    trying to break out under 4-point restraint. She had slandered
    and defamed Mr. Wang, which had resulted in her own cruel treat-
    ment and torture to Mr. Wang.

27. Defendant Misty Delciampo had falsely alleged that on 2/22/2017
    "while in restraints pt.(=patient Mr. Wang) remained rigid, clin-
    ching fist and threatening to do physical harm to staff when re-
    leased from restraints. Pt. continued to threaten staff stating
    I'm going to hurt you assault you when I get out...'Pt. continues

Page 13

to threaten to harm staff and accusing staff of poisoning him..."
"PT. not ready to meet criteria for restraint discontinuation at
this time (10:15/PM). 4-point restraints continued into following
shift; will be placed on continuous observation by 2 staff for
risk of severe aggression...." (CVH Integrated Progress Notes,
MPI#: 207130, Patient Name: Wang, Lishan. CVH-136, Rev.9/19/11)
Please refer to the first Supplementary Complaint Dkt# 51-1 for
relevant exhibit    B. RN Misty Delciampo had falsely accused Mr.
Wang of being "violent and threatening" and recommended continu-
ation of 4-point restraints. She had committed the use of excess-
ive force  **to**   Mr. Wang and violated his 14th Amendment Right
(unsentenced inmate). Defendant Misty Delciampo had also document-
ed several times untruthfully that Mr. Wang was "violent" and
"threatening" to harm others physically on 2/22/2017 and after.
Her false accusations against Mr. Wang had also contributed to
Defendant Dreisbach's illegal use of Benadryl on him. Therefore,
Defendant Delciampo had also violated Mr. Wang's      14th
Amendment Rights in their illegal injection of Benadryl to him
against his will on 2/22/2017. Mr. Wang had actually NEVER talk-
ed to defendant Delciampo on 2/22/2017. And yet she had alleged
that Mr. Wang had said to her "You fucking cun*" on 2/22/2017.

28. Defendant RN Clara Mejias had falsely and repeatedly alleged on
2/22/2017 in Mr. Wang's medical records that Mr. Wang had threat-
ened physical harms to others; she had actually said untruthfully
that Mr. Wang was "threatening to continue to assault the staff"
on 2/22/2017, indicating that Mr. Wang had actually assaulted
Whiting employees on that day. This is a self-refuting lie.
Defendant Clara Mejias had injected the first dose of Benedryl
to Mr. Wang on 2/22/2017 without court order and against his will.

Page 14

She had violated Mr. Wang 14th Amendment Right in her illegal injection of Benadryl to him. She had also contributed to the cruel 10-hour 4-point restraints on Mr. Wang with her false accusations against Mr. Wang and had committed libel against Mr. Wang and violated his 14th Amendment Right (as an unsentenced inmate)

29. Defendant RN Heather Madison had injected the first dose of Zyprexa to Mr. Wang on 2/22/2017, but falsely alleged that Mr. Wang had "threatened physical harm to this RN (=writer Madison)" (CVH-480b, Rev 4/12, CVH Part II-NURSING OBSERVATION AND CARE OF THE PATIENT, Patient Name: Lishan Wang, MPI#: 207130, 2/22/2017, 3:00 PM). On CVH-480a Form of the same date, she had untruthfully described Mr. Wang's "violent behaviors" toward the staff before the 4-point restraint. Mr. Wang had NEVER talked to defendant Madison on 2/22/2017. Her false accusations against him had resulted in the 10-hour continuous 4-point restraints on Mr. Wang after the injection of first dose of Zyprexa. Defendant Madison had committed libel and cruelty against Mr. Wang and violated his 14th Amendment Right on 2/22/2017.

30. Defendant RN Judy Hall had injected the second dose of Benadryl to Mr. Wang against his will on 2/22/2017. She had violated his 14th Amendments Rights. Because Mr. Wang was drowsy due to the illegal uses of Benadryl to him, he could NOT tell whether or not he had actually said to RN Hall what she had documented in the medical records, such as Mr. Wang had promised to follow " staff's direction", etc. Defendant Judy Hall had been reasonable and professional to Mr. Wang during his stay at Whiting between 9/2010 and 2/2011. During 4/2015 and 9/2017, RN Hall herself was suffering PTSD but she was NEVER abusive to Mr. Wang.

31. Mr. Wang had sent many letters and numerous motions to Connecticut Attorney General Office, CVH CEO, DMHAS and its Commissioner, Dr. Ward-McKinlay, New Haven Superior Court, and other institutions regarding the medical malpractice, patient abuse, wrong diagnosis and unnecessary forced medication occurred to him. In his letter about his "recent situation" in March 2017, he had reported his being injected with Benadryl. Via his court-appointed Public Defender, he had reported the problems and abuses he had experienced during the forced medications and Whiting's failures in carrying out the court-stipulated protocols for forced medication. The relevant defendants <u>Commissioner Miriam Delphin-Rittmon</u>, <u>CVH CEO Helene Vartelas</u>, and <u>Whiting Director Thomas Ward-McKinlay</u> knew the problems and the complaints from Mr. Wang, and they are legally responsible for the criminal activities and misconducts committed by the other defendants in this lawsuit and other Whiting or CVH employees. They had violated Mr. Wang's 14th Amendment Right in their negligence of their official duties.

32. Being 4-point restrained is extremely uncomfortable, painful, agonizing, dreary, stressful, traumatic, injurious both mentally and physically. Mr. Wang had moved restlessly again and again because he was in pain and distress. He was in agony! The pain and agony became more and more intolerable as the hour of 4-point restraint extended. He twisted or bended his body because of the pain and distress, but being 4-point restrained he could NOT change his body position. His body movements or struggles were the results of extreme discomfort, pain, agony, and distress from the 4-point restraints, NOT a sign of being "violent", or trying "to break out" of the restraints, or posing physical harm to self or others. He had to "clench" his fists because of the numbness and agony.

33. On 2/22/2017 Mr. Wang had NEVER talked to RNs Heather Madison and
Misty Delciampo. Yet these two RNs had falsely alleged that Mr.
Wang had "threatened" them or uttered profanity to them.


Indeed, RN Misty Delciampo's lies are monumental.


Date: February 22, 2017             Time: 8:45 PM
Writer: Misty Delciampo, RN
Document: CVH-480b (side 2)Rev.4/12  CVH PART II-NURSING
              OBSERVATION AND CARE OF THE PATIENT
Patient: WANG, LISHAN               MPI#: 207130

RN Summary Progress Note:

Pt. refusing to cooperate with v/s (Note: vital signs) except
R:16 (Respiratory rate). Pt. not responding to staff's engage-
ment. Pt. continues to demonstrate angry affect, clinches
fists. Pt. stated "I'm going to hurt you when I get out of res-
traints you fucking cu**" to this writer.


Date: February 22, 2017             Time: 10:15 PM
Writer: Misty Delciampo, RN
Document: CVH-136 Rev. 9/19/11      CVH Integrated Progress Notes
Patient: WANG, LISHAN               MPI#: 207130

RN Shift Note:

Pt. was placed in 4 point restraints at 2:45PM for threatening
physical harm to staff and continuous agitation. While in
restraints pt. remained rigid, clinching fists and threatening
to do physical harm to staff when released from restraints. Pt.
continued to threaten staff stating "I'm going to hurt you,
assault you when I get out." Pt. resisted restraints. Pt. re-
ceived im (Note: intrmuscular) PRN (Note: as needed) Benadryl
50 mg Im (Intrmuscular) and scheduled Zyprexa 5 mg Im at 7:00
PM with no effect. Pt. continues to threaten to harm staff and
accuse staff of poisoning him. Pt. not ready to meet criteria
for restraint discontinuation at this time. 4-point restraints
continued into following shift; will be placed on continuous
observation by 2 staff for risk and severe aggression when meets
discontinuation of restraints criteria. Staff will continue to
monitor and offer support as needed.

Page 17

34. The false and untruthful statements made by RN Heather Madison

in Mr. Wang's medical records on 2/22/17, maliciously accusing

him of threatening her.

CVH-480b **CONNECTICUT VALLEY HOSPITAL**
Rev 4/12   **PART II – NURSING OBSERVATION**
*Side 1*    **AND CARE OF THE PATIENT**
   [ ] General Psychiatry Division
[✓] Whiting Forensic Division
[ ] Addiction Services Division

Patient Name: LISHAN WANG

MPI# 207130   *Print or Addressograph Imprint*

SECLUSION/RESTRAINT START DATE: 2/22/17   TIME: 2:45 am/pm

Unit: 6

RN ASSESSMENT AND PROGRESS NOTE: Initial Orders - RN documents a Behavioral/Physical Assessment at 15 min., 30 min., 1 hour and hourly thereafter. Reorders - RN documents hourly.

NOTE: *Physical restraints of less than 15 minutes requires completion of only the starred (*) sections below.

| Initial 15 min* Date: 2/22 Time: 3:00 AM/PM | Initial 30 min Date: 2/22 Time: 3:15 AM/PM |
|---|---|
| Behavioral Assessment: THREATENING THIS RN. UNKLY TO HOLD RATIONAL CONVERSATION w/ RN FLM | Behavioral Assessment: Angry-agitated Not given eye contact |
| Physical Assessment: NO SIGNS OF PHYSICAL DISTRESS 2/14 AM | Physical Assessment: Rigid. |
| Circulation: [X] Adequate [ ] Other:_____ | Circulation: [X] Adequate [ ] Other:_____ |
| Skin Integrity: [ ] Intact [ ] Other:_____ | Skin Integrity: [X] Intact [ ] Other:_____ |
| RN Signature: _____ | RN Signature: Clara Mejias RN |

Note: The 15 minute RN assessment is documented 15 minutes after the initiation of physical, mechanical or seclusion use.
Hourly Assessment:

| 1 | Behavioral Assessment: Angry, agitated & threatening |
|---|---|
| | Physical Assessment: - Rigid/pulling away from sound of voice from staff |
| | Circulation: [ ] Adequate [ ] Other:_____   Skin Integrity: [ ] Intact [ ] Other:_____ |
| | Date 2/22/17 Time 3:45 am/pm P: Ref R: 18 BP: Ref RN Signature: Clara Mejias RN |

| 2 | Behavioral Assessment: Angry, agitated threatening to physically |
|---|---|
| | Physical Assessment: assault Rigid |
| | Circulation: [X] Adequate [ ] Other:_____   Skin Integrity: [✓] Intact [ ] Other:_____ |
| | Date 2/22/17 Time 2:45 am/pm P: Ref R: 18 BP: Ref RN Signature: Clara Mejias RN |

35. On 2/22/17, Dr. Kurlyandchik had written two medical notes in

Mr. Wang's medical records, one hand-written and another one

computer-generated. This raises the possibility that she had

prepared them by cut-and paste. Their truthfulness is in doubt.

The false and untruthful statements made by Dr. Kurlyandchik

in Mr. Wang's medical records on 2/22/17, maliciously accusing

him of being violent and threatening staff with physical harm.

| Di sc | Date | Time | Identify Discipline (i.e., Psychiatry, Nursing, SW, Rehab, Psychology, Ambulatory Care Services, etc.) Print Name (next to/below) Signature |
|---|---|---|---|
| | 2/22/17 | 4pm | **Psychiatrist Note** Received court order for invol meds today after Mr. Wang returned from court. As per previous discussion w/ staff and review of the chart, Zyprexa and Geodon were proposed medications to start. Attempted to discuss indications, adverse effects and potential benefits; consequences of tx refusal w/ Mr. Wang. However he became quickly angry, irritated; yelling that he has been given the incorrect diagnosis and is being treated for the incorrect condition. He yelled, "You have the wrong diagnosis, you can do whatever you want, you can even kill me... you can try me guilty... I am not going to submit to your artillery... you're going to be killed... I will protect myself how I have to..." and other paranoid, disorganized statements during attempts to engage him in reality based discussion; regarding offer of oral vs. IM meds. He continued to yell that he will protect himself; attempts to direct him to the quiet room failed and eventually he became physically aggressive w/ staff. He was carried to restraint room, where he continued to yell that we will all be sued and we are doing this illegally; yelling that "you should quit your job, don't get involved in this, I have the government of China behind me..." and other paranoid statements. He was given IM meds olanzapine 5mg. I attempted to evaluate him and explain to him indications, check for any injuries, however he continued to yell that he refuses treatment – he had no distress, was moving all limbs and appeared to have full circulation on brief eval. He continued in paranoid statements about multiple previous psychiatrists leaving due to this case and not wanting to be involved; about having his attorney present for any interaction w/ clinical staff; and about him protecting his rights. **Plan:** Attempt to engage in discussion regarding need for meds, AE and potential benefits. Olanzapine ODT 5mg for tx of psychosis ordered at 8am and 8pm; x4 days then increase to 5mg in the morning and 10mg at night time; to stand in front of nursing station for 10 min after meds. Olanzapine 5mg IM ordered for every oral dose missed. If able to tolerate medication, continue titrating up; monitor for AE. Will re-eval for labs and EKG early next week.  *Jack Kurlyandchik* |
| PSCH | 2/22/17 | 4pm | Psychiatrist *[handwritten entry]* attempted to re-eval pt, asked him how he was doing, he yelled he didn't want to talk. Asked what would happen if restraint were removed, he yelled, "Now, that you tried medicating I am going to be violent" and "I have to protect myself." Continued w/ disordered + yelling + unable to participate in any reality based discussion, continued to threaten violence + unable to be safely released from restraint at this time. *Jack Kurlyandchik* |

(Note: There is evidence showing that Whiting had NOT documented Mr.

Wang's medical records chronologically, meaning that staff had

left blank space in Mr. Wang's medical records to allow them

to add something retrospectively. This further proves that

Whiting had fabricated Mr. Wang's medical records with lies.)

36. Dr. Victoria Dreisbach is not only the chief culprit and schemer in illegally injecting Mr. Wang with two doses of Benadryl which caused him passed out on the wee hours of 2/23/17, but also an evil, pathological, and criminal liar in treating Mr. Wang's head trauma and broken nose as a physician. In a medical note dated 2/23/17, she lied that Mr. Wang fell "without L.O.C." (L.O.C.: Loss of Consciousness). The fact is: Mr. Wang had lost his consciousness on 2/23/17 at the bathroom before he fell and hit the urinal. The loss of consciousness was caused by the two injections of Banadryl against his will; and they were prescribed by Dr. Dreisbach, because she had falsely alleged in black-and-white that Mr. Wang was violent and threatening staff with physical harm, and she used large doses of Benadryl to paralyse and sedate him.

Another fact to prove Dr. Dreisbach's incompetence and doing harm to Mr. Wang is: Doctors at Middlesex Hospital had instructed Dr. Dreisbach to consider giving Mr. Wang antibiotics for potentially possible infection. Dr. Dreisbach had NEVER given Mr. Wang any antibiotics or discussed this issue with him.

**Middlesex Hospital**

**Basic Information**
Time seen: Date & time 02/23/2017 09:14:00.

**Addendum**
Addendum: Contacted about a discrepancy on the CT scan by radiology. Patient has evidence of a nasal bone fracture which was not read on the initial preliminary CT. Contacted the CVH medical condition, discussed starting on antibiotics for prophylaxis due to the fact that this could be considered open fracture since there was a laceration that was sutured. Also discussed the need for ENT referral if patient is having significant deformity or symptoms when the swelling is resolved. She verbalized understanding of these recommendations and the understanding that there is a nasal bone fracture that was not initially included in the discharge instructions.

**Signature Line**
(Electronically Signed on: 02.23.17 09:15)

INSTRUCTIONS: *To be completed by licensed physician on staff from Connecticut Valley Hospital.*
LISHAN WANG is being referred from Unit 2 to MIDDESEX ER
*(Patient Name)*         *(Name of Hospital)*
for the following medical or surgical conditions: FELL & 1" LACERATION TO BRIDGE OF NOSE WITHOUT L.O.C.

37.  Staff member Mr. Steve Palenski was one of the staff who

involved in restraining Mr. Wang on 2/22/17 for forced medication.

After the first injection of Zyprexa, he had continued to monitor

Mr. Wang for at least another one and half hours. He documented

that Mr. Wang had threatened "to sue the staff", but Mr. Palenski

had NEVER mentioned that Mr. Wang had ever uttered profanity

to the staff or threatened to harm them physically, proving

that ALL the defendants were lying against Mr. Wang in Mr.Wang's

medical records of 2/22/17, falsely accusing him of threatening

them with physical harm and being violent on 2/22/17 or after.

| TIME q 15 min | INIT MHAJ FTS | DESCRIPTION OF PATIENT BEHAVIOR Instructions: Staff assigned to Continuous Observation, initial below & complete signature log. Removal from Seclusion/Restraint is based on meeting discontinuation criteria in the MD Order. | INTERVENTION (Use Codes Below) |
|---|---|---|---|
| 8pm | | THREATENING TO SUE STAFF | PE/R |
| 315 | | Threatening to sue staff | R |
| 330 | | Threatening to sue staff | R |
| 345 | CM | Refusing to talk & RN Refusing V/s "Please get away from" | R |
| 4pm | | Refuses to have any contact, angry | |
| 415 | | Pt. Refuses to answer s/s staff | |
| 420 | | Continues to threaten staff "Physical harm if" | |
| | | Taking out restraints" | |

INTERVENTION(S) ATTEMPTED TO DISCONTINUE SECLUSION/RESTRAINT:
R    Use to indicate any intervention attempted but Refused
REL  Offer patient & demonstrate/practice relaxation strategies
ACT  Offer patient distracting/calming activities (e.g. reading, story telling, music, etc.)
MED  Offer patient medication
SEN  Sensory Modalities

PE   Review of precipitating event with patient
ER   Review emotional response with patient
AR   Offer/discuss alternative actions/responses with patient
DC   Discontinued Procedure
OTH  Other:

| Signature Log | Init | Signature Log | Init | Signature Log | Init |
|---|---|---|---|---|---|
| Clara Mejias RN | | | | Walter Ullad | |
| | | | | | |
| STEVE PALENSKI | | | | | |

## V .  LEGAL CLAIMS

38. Plaintiff re-alleges and incorporates by reference paragraphs
    1-37 (and paragraphs 1-53 of the original complaint Dkt# 1).

39. Mr. Wang is a non-violent, good man and law-abiding citizen, as
    being displayed in many examples mentioned in the Case# 3:16-cv-
    1207-AVC. He follows the rules at DOC and Whiting. He opposed
    and resisted forced medication of Zyprexa because he believed he
    was competent to stand trial all the time and he did NOT have any
    mental illness which caused him "incompetent to stand trial". He
    exercised civil disobedience to protest the wrong diagnosis of
    his mental health and the cruel use of unnecessary Zyprexa.

40. Plaintiff continues to uphold those legal claims stated in the
    original complaint (Dkt# 1). However, as being ordered by U.S. Court
    (Dkt# 100 & 124), plaintiff files this Amended Complaint that
    includes: 1) the Fourteenth Amendment due process claim against
    Dr. Dreisbach and nurses Mejias and Hall for their failure to
    secure a court order to involuntarily medicate plaintiff with
    Benadryl; 2) the Fourteenth Amendment due process claim against
    Commissioner Delphin-Rittmon and CVH CEO Vartelas and Whiting
    Director Ward-McKinlay for their failure to take action after
    being informed of the violations of plaintiff's due process
    rights by Dr. Dreisbach; and 3) the Fourteenth Amendment claim
    (unsentenced prisoner)    of unreasonable/excessive use of
    force against nurses Mejias, Madison, and Delciampo, and Drs.
    Kurlyandchik and Dreisbach pertaining to their statements or
    decisions that resulted in plaintiff's continued confinement
    in restraints for ten (10) hours, even though he was not engag-
    ing in violent or threatening conduct.

## VI . PRAYER FOR RELIEF

41. WHerefore, plaintiff respectfully prays that this court enters
judgment granting plaintiff:

42. A declaration that the acts and omissions described herein vio-
lated plaintiff's rights under the Constitution and laws of the
United States.

43. Compensatory damages against each defendants, jointly and severa-
lly. Using the deal pending in Whiting hospital abuse scandal
(Note: In State of Connecticut v. Mark Cusson, victim's family
asks $36 million for compensation), as case laws, plaintiff resp-
ectfully asks the Court to order Whiting and defendants to pay Mr
Wang $100 million (one hundred million dollars) in damage for the
ten (10) hours ordeal of 4-point restraints, two (2) illegal in-
jections of Benadryl,broken nose bone, and brain damage caused by
concussion.

44. Punitive damages against each defendant for their sadism, cruel-
ty, malicity, violations of "DO NO HARM" oath, lying in medical
records, and deceitful declarations to the court.

45. A jury trial on all issues triable by jury.

46. Plaintiff's cost in this Court.

47. Any additional relief this court deems just, proper, and equit-
able.


DATED: _October 28, 2020_

RESPECTFULLY SUBMITTED,


_Lⵠ_
_____

LISHAN WANG, PLAINTIFF
#375805

VERIFICATION

I have read the foregoing complaint and hereby verify that the
matters alleged therein are true, except as to matters on inform-
ation and belief, and of these, I believe them to be true. I cer-
tify under penalty of perjury that the forgoing is true and corr-
ect. Executing at  Macdougall CI, 1153 East Street S        Suffield,
CT   06080  on  10/28_____, 20 20___.


SIGNATURE:_____
           LISHAN WANG, PLAINTIFF




NOTE: Plaintiff has read the Court ruling of 9/25/20 (Dkt# 124)
      and wanted to comply with the court orders. However, this
      revised version is prepared by cut-and-paste and there are
      still residual words or sentences which are irrelevant to
      the events occurred on 2/22/17 and/or 2/23/17. Plaintiff
      respectfully asks the court to forgive him for such defects.

## CERTIFICATION

I hereby certify that on __10/28__ 202_0_a copy of the foregoing Motion for Resubmitting

mended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic

filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


_____

**LISHAN WANG**
#375805
MacDougall
1153 East Street South
Suffield, CT   06080