### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

LISHAN WANG,                          :
  plaintiff,                       :
                              :
    v.                             :   case no. 3:17cv586(AVC)
                              :
MIRIAM DELPHIN-RITTMON, ET AL., :
  defendants.                      :

### <u>RULING ON AMENDED COMPLAINT</u>

    The plaintiff, Lishan Wang, is currently incarcerated at MacDougall-Walker Correctional Institution (hereinafter "MacDougall-Walker").  On September 14, 2021, Wang filed an amended complaint.  For the reasons set forth below, the amended complaint is dismissed in part.

### Procedural Background

    Wang initiated this action by filing a civil rights complaint against the defendants, Commissioner of the Department of Mental Health and Addiction Services Miriam Delphin-Rittmon, Chief Executive Officer of Connecticut Valley Hospital Helene Vartelas, Director of Whiting Forensic Hospital, Thomas Ward-McKinlay, and Dr. Victoria Dreisbach.  His claims arise from the implementation of a state court order to restore Wang to competency to stand trial on multiple criminal charges.  The court ordered that medical personnel at Whiting Forensic Hospital (hereinafter "Whiting") forcibly administer medications to Wang on February 22, 2017.

On November 15, 2017, this court dismissed all claims asserted against the defendants in their official and individual capacities, with the exception of the Fourteenth Amendment due process claim.  The due process claim is based on the defendants' February 22, 2017 intramuscular administration of Benadryl to Wang without his consent or a court order.

On September 23, 2019, the court struck two of Wang's supplemental complaints from the docket and entered an order permitting him, pursuant to Federal Rule of Civil Procedure 15(a)(2), to file an amended complaint adding five new defendants and a new Fourteenth Amendment claim.  The court was clear regarding the claims that it permitted Wang to assert in the amended complaint and the claims that he was not permitted to pursue.

On October 21, 2019, Wang filed an amended complaint, [ECF No. 102], that re-named Delphin-Rittmon, Vartelas, Ward-McKinlay, and Dr. Dreisbach as defendants and added Dr. Diana Kurlyandchik and registered nurses Clara Mejias, Heather Madison, Judy Hall and Misty Delciampo, as new defendants. However, that amended complaint did not comply with the court's September 23, 2019 order.

On September 25, 2020, the court struck this amended complaint from the docket and entered an order permitting Wang

one additional opportunity to file an amended complaint.  The
court again specifically articulated the claims that Wang could
pursue in the amended complaint.  See Ruling, ECF No. 124 at 5-
7, 14-18.

On October 29, 2020, Wang sought leave to file an amended
complaint.  On September 14, 2021, the court granted Wang leave
to file the amended complaint that was attached to the motion to
amend.  See Ruling, ECF No. 136.  The amended complaint names
Delphin-Rittmon, Vartelas, Ward-McKinlay, Drs. Dreisbach and
Kurlyandchik, and nurses Mejias, Madison, Hall and Delciampo, as
defendants.  See ECF No. 139.

**FACTS**

Pages five through fifteen of the amended complaint [ECF
No. 139] and reported state and federal court decisions
pertaining to Wang's 2017 criminal convictions for manslaughter,
attempted assault, and carrying a pistol without a permit[1] that
are referenced in the amended complaint, state the following
facts.

On April 6, 2015, the Connecticut superior court held an
evidentiary hearing in State v. Wang, Case No. NNH-CR10-0104889-
T, to determine whether Wang, who was representing himself after

---

[1] See State v. Wang, 323 Conn. 115, (2016), cert. denied, ___ U.S. ___, 137
S. Ct. 1069 (2017).

3

having been found to be restored to competency, was not capable of representing himself and was incompetent to stand trial.  See Wang, 323 Conn. at 120-21; Am. Compl. ¶ 13.  The court concluded that Wang was not competent to stand trial, ordered that he be confined at Whiting to be restored to competency, and appointed a public defender to represent him until it could be determined whether treatment could restore Wang to competency.  Id.

On September 14, 2015, the court held an evidentiary hearing in State v. Wang, Case No. NNH-CR10-0104889-T, to consider whether Wang had been restored to competency.  Wang, 323 Conn. at 121.  A psychiatrist from Whiting, Dr. Mark S. Cotterell, testified that Wang had been diagnosed as suffering from "unspecified schizophrenia spectrum and other psychotic disorder[s]."  Id. (internal quotation marks omitted); Am. Compl. ¶ 13.  Dr. Cotterell testified further that he did not think Wang had been restored to competency to stand trial, but that Wang could be restored to competency in the future if he agreed to take medication.  Id.  The court found that Wang was not competent to stand trial and appointed a psychiatric nurse named Gail Sicilia as Wang's health-care guardian.  The court requested that Sicilia prepare a report that included her evaluation of Wang's mental health and competency and her recommendation concerning the issuance of an order to forcibly

4

administer anti-psychotic medication to Wang to restore him to competency.  Wang, 323 Conn. at 121-22.

On October 26, 2015, the court held an evidentiary hearing at which Dr. Cotterell and APRN Sicilia testified that there were medications available to treat Wang's mental health conditions.  Id. at 122-24.  Cotterell noted that the staff at Whiting could carefully monitor Wang and any side effects from the medications.  In addition, both Cotterell and Sicilia testified that it would be in Wang's best interest to be treated with the medications such as Olanzapine (brand name Zyprexa) and Ziprasidone (brand name Geodon) to restore him to competency for trial and for his general mental health.  Id.; Am. Compl. ¶ 14.

On November 18, 2015, the court held a hearing to consider the state of Connecticut's motion seeking a court order that Wang be involuntarily medicated to restore him to competency to stand trial.  See Wang, 323 Conn. at 124.  At the end of hearing, the court concluded that "the State had proven all of the elements of the test[2] . . . for establishing the constitutionality of an order of involuntary medication by clear and convincing evidence" and granted the state's motion for involuntary administration of medication to Wang.  Id. at 124.

---

[2] The trial court relied on the test set forth in Sell v. United States, 539 U.S. 166, 179-81 (2003).  Id. at 124.

The judge supplemented his findings with a memorandum of decision.  Id.

Wang appealed the decision.  On September 13, 2016, the Connecticut supreme court affirmed the order of the trial court to forcibly medicate Wang in order to restore him to competency to stand trial.  See Wang, 323 Conn. at 144.  Wang filed a petition for writ of certiorari, seeking review by the United States Supreme Court.  On February 21, 2017, the United States Supreme Court denied Wang's petition.  See Wang v. Connecticut, ___ U.S. ___, 137 S. Ct. 1069 (2017).

Wang alleges that the trial judge approved only two medications to be forcibly administered to him, Olanzapine (brand name Zyprexa) and Ziprasidone (brand name Geodon).  These medications affect the central nervous and cardiovascular systems.  An individual who is injected with the medications must be continuously monitored because of side effects of the medications, including their effect on an individual's central nervous and cardiovascular systems.

On February 22, 2017 at approximately 2:30 p.m., a unit manager at Whiting informed Wang that he must report to the treatment room in building 2, to be administered the medications ordered by the court to restore him to competency.  Wang refused to walk to the treatment room and informed the unit manager and

6

other Whiting employees that they would have to carry him to the room.  The unit manager and several other employees carried Wang to a treatment room and strapped his arms and legs to a bed. Wang stiffened his body as the Whiting employees carried him to the restraint room but did not push, kick, grab, scratch, or hit the employees or spit or yell profanities at them.

Over the next ten hours, two psychiatrists, Drs. Dreisbach and Kurlyandchick, as well as registered nurses Madison, Delciampo, Mejias and Hall, treated Wang.  At approximately 2:45 p.m., nurse Madison entered the treatment room and administered one dose of Zyprexa to Wang by injection pursuant to the order of the superior court judge.  At approximately 3:00 p.m., nurse Madison entered a notation in Wang's medical record indicating that Wang had threatened to harm her if released from restraints.

At 4:00 p.m., Dr. Kurlyandchick entered the treatment room and spoke to Wang for the first time that day.  Wang accused Dr. Kurlyandchick of being crazy and stated that he did not need medication, he was going to sue Dr. Kurlyandchick, and he had the support of the Chinese government.  Dr. Kurlyandchick visited Wang again at 4:30 p.m.  Either during this visit or during the 4:00 p.m. visit, Dr. Kurlyandchick informed Wang that she would discontinue the order that he be restrained if he

stated that he had no intention of hurting anyone.  Wang refused to make that statement because he thought it was a trap.  After speaking with the Wang, Dr. Kurlyandchick left Whiting for the rest of the day.

Dr. Dreisbach took over Wang's treatment after Dr. Kurlyandchick left.  Although Wang had not exhibited any side effects from the injection of Zyprexa, Dr. Dreisbach prescribed two doses of Benadryl to be administered to him via injection.  The side effects of Benadryl include loss of balance, low blood pressure and loss of consciousness.  There was no court order to administer Benadryl to Wang.

Nurse Mejias administered the first dose of Benadryl.  Wang asked nurse Mejias why he was receiving an injection of Benadryl.  Nurse Megias responded that Dr. Dreisbach had ordered it.  Nurse Mejias entered a notation in Wang's medical record indicating that Wang had threatened to harm staff members if released from the restraints.

Nurse Hall administered the second dose of Benadryl.  When Wang asked Hall why he was receiving an injection of Benadryl, she responded that it was for the potential side effects of Zyprexa.

At approximately 8:45 p.m. that evening, nurse Delciampo entered a note in Wang's medical record indicating that Wang had

8

refused to comply with vital signs, except for respiration rate, exhibited an angry affect, clenched his fists, referred to her in a derogatory manner, and threatened to hurt her when he was released from the restraints.  At approximately, 10:15 p.m. that evening, Delciampo entered a note in Wang's medical record documenting what had occurred during her shift.  Id. ¶¶ 27, 33. She indicated that Wang had been placed in four-point restraints at 2:45 p.m. due to his continuous agitation and threats to harm staff members, his body had remained rigid and his fists had remained clenched throughout his confinement on restraints, and he continually threatened to physically harm staff members if released from restraints.  Nurse Delciampo noted further that at 7:00 p.m., a nurse or physician had administered 50 milligrams of Benadryl to Wang via intramuscular injection as well as 5 milligrams of Zyprexa via intramuscular injection, with no effect on his behavior.  Delciampo opined that Wang did not meet the criteria for discontinuation of restraints and noted that he would remain on continuous observation during the following shift.  Wang remained strapped to the bed in the treatment room for about ten hours.

At some point close to midnight on February 22, 2017, or in the very early hours of February 23, 2017, medical staff members removed the straps from Wang's legs and arms.  Wang asked to use

9

the toilet.  When he got up to walk to the bathroom, his gait was unsteady and he was still drowsy.

After urinating, Wang passed out and collapsed to the floor.  He hit his nose when he fell and fractured his nasal bone.  Medical personnel transported him to Middlesex Hospital for treatment.  His injury required four stitches.

On March 8, 2017, Wang met with Cotterell and members of his treatment team at Whiting.  Cotterell confirmed that medical and mental health staff members were required to obtain a court order prior to administering any drug to Wang, other than the two medications, Zyprexa and Geodon, which on November 18, 2015, the court ordered to be administered to him.

On September 22, 2017, in State v. Wang, Case No. NNH-CR10-0104889-T, Wang entered pleas of nolo contendere to one count of manslaughter, one count of attempted assault, and two counts of carrying a pistol without a permit and the court imposed a sentence of thirty-two years of imprisonment, followed by five years of special parole.[3]  As of October 15, 2017, Wang had been transferred to Garner Correctional Institution.

---

[3] Information regarding this criminal case may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up, Criminal/Motor Vehicle, Convictions - by Docket Number using  NNH-CR-10-

**STANDARD**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  Id.  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and

citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).  However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

## DISCUSSION

In accordance with the court's prior rulings granting Wang leave to file an amended complaint, Wang identifies three legal claims: (1) Dr. Dreisbach and nurses Mejias and Hall, in their individual capacities, denied him due process in violation of the Fourteenth Amendment by failing to secure a court order to

involuntarily medicate him with Benadryl or to provide him with sufficient information to enable him to make an informed decision about the recommendation that he be given injections of Benadryl; (2) commissioner Delphin-Rittmon, chief executive officer Vartelas, and director Ward-McKinlay, in their individual capacities, denied him due process in violation of the Fourteenth Amendment by failing to take action after being informed of the violation of his due process rights by Dr. Dreisbach; and (3) that nurses Mejias, Madison and Delciampo and Drs. Kurlyandchik and Dreisbach, in their individual capacities, subjected him to unreasonable or excessive force in violation of the Fourteenth Amendment by continuing to confine him in restraints for ten hours even though he was not engaging in violent or threatening conduct.  He sues the defendants in their individual capacities and seeks declaratory relief and compensatory and punitive damages.

I.  **Declaratory Relief**

Wang asks the court to declare that the defendants' conduct violated his rights under the United States Constitution and "laws of the United States."  Wang asserted the identical request for declaratory relief in the original complaint and the court dismissed that claim for relief as barred by the Eleventh Amendment.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." Colabella v. American Institute of Certified Public Accountants, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates in a prospective manner to allow parties to resolve claims before either side suffers great harm. See In re Combustion Equip. Assoc. Inc., 838 F.2d 35, 37 (2d Cir. 1988).

In Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. Id. at 155-56. The exception to Eleventh Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (recognizing that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past").

14

The allegations in the complaint relate to conduct that occurred in February 2017, at Whiting.  As indicated above, Wang has been sentenced to thirty-two years of imprisonment and is confined at MacDougall-Walker.  Wang's request for a declaration that the defendants violated his Fourteenth Amendment rights in February 2017 cannot be properly characterized as "prospective" because Wang does not allege how such relief would remedy a future federal constitutional violation by the defendants. Thus, Wang's request for declaratory relief does not meet the exception to the Eleventh Amendment immunity set forth in Ex Parte Young.  Accordingly, the claim seeking a declaration that the defendants violated Wang's federal constitutional rights in the past is dismissed pursuant to 28 U.S.C. § 1915A(b)(1), as barred by the Eleventh Amendment.  See, e.g., Green v. Mansour, 474 U.S. 64, 71-73 (1985) (holding that if there is no allegation of an ongoing violation of federal law, the Eleventh Amendment prevents federal courts from providing notice relief or a declaratory judgment that state officials violated federal law in the past).

## II.  <u>Personal Involvement</u>

Wang states that Delphin-Rittmon, as Commissioner of the State of Connecticut Department of Mental Health and Addiction Services, is responsible for the operation of the Department of

Mental Health and Addiction Services and Whiting; Vartelas, as the Chief Executive Officer of Connecticut Valley Hospital, is responsible for the operation of Connecticut Valley Hospital and Whiting; and Ward-McKinlay, as Director of Whiting, is responsible for the operation of Whiting and for addressing grievances and complaints that he receives.  It is evident that Wang has named these individuals as defendants because of their supervisory roles either at Whiting, Connecticut Valley Hospital, or the Department of Mental Health and Addiction Services.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation."  Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).  In Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), the second circuit held that "after Iqbal, there is no special rule for supervisory liability," and instead, "[t]he violation must be established against the supervisory official directly."  Id. at 618.  Therefore, a government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation."  Id. at 619.  Rather, "a plaintiff must plead

16

and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Id. at 618 (quoting Iqbal, 556 U.S. at 676). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014).

Wang alleges that in March 2017, he sent a letter to the defendants, commissioner Delphin-Rittmon, chief executive officer Vartelas and director Ward-McKinlay, regarding the orders issued by Dr. Dreisbach that Wang be injected with Benadryl on February 22, 2017.  Wang states that these defendants failed to take action to correct or remedy this alleged violation of his rights.  Wang contends that Delphin-Rittmon, Vartelas and Ward-McKinlay are legally responsible for the other defendants' February 22, 2017 conduct.

Wang does not allege that these three supervisory officials were directly involved in the administration of medication to him, including Benadryl, on February 22, 2017, his placement in restraints, or the decision to continue his placement in restraints for ten hours.  Nor does he allege that any defendants or other medical staff member at Whiting administered

17

Benadryl to him on another date.  Rather, his claim is that he made these supervisory defendants aware, after the fact, of the conduct of medical personnel who were involved in the February 22, 2017 forcible injection of Benadryl and the maintenance of Wang on four-point restraints.  These allegations do not state a claim of direct, personal involvement in the violation of Wang's Fourteenth Amendment rights by Delphin-Rittmon, Vartelas or Ward-McKinlay, under the standard set forth in Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020).  The Fourteenth Amendment due process claim that other defendants forcibly medicated Wang with Benadryl without court authorization on February 22, 2017 and the Fourteenth Amendment claim that other defendants confined Wang in four-point restraints for an excessive period on February 22, and 23, 2017, as asserted against the defendants, Delphin-Rittmon, Vartela and Ward-McKinlay, are dismissed.  See 28 U.S.C. § 1915A(b)(1).

### III. **Fourteenth Amendment Claims – Due Process**

The court will permit the following two Fourteenth Amendment claims to proceed:  1) the claim that Dr. Dreisbach and nurses Mejias and Hall, in their individual capacities, denied Wang due process when, on February 22, 2017, they ordered two injections of Benadryl and administered the injections to him without authorization from the court and without providing

him with enough information to enable him to make an informed decision about the recommended injections of Benadryl in conjunction with the court-ordered injections of Zyprexa and Geodon; and 2) the claim that Drs. Kurlyandchik and Dreisbach and nurses Mejias, Madison and Delciampo, in their individual capacities, denied Wang due process when they used or facilitated the use of excessive or unreasonable force against him by continuing to confine him in restraints for ten hours even though he was not engaging in violent or threatening conduct.

IV.  **State Law Claims**

Although not included in his description of legal claims, Wang mentions state law claims of defamation and negligence in the facts section of the amended complaint.  The court notes that in permitting Wang to file an amended complaint, it did not grant him leave to assert state law defamation or negligence claims.

(a)  **Defamation**

Wang alleges that Drs. Kurlyandchik and Dreisbach and nurses Mejias, Madison and Delciampo defamed him by entering notations in his medical record on February 22, 2017. Specifically, he states that these notations falsely described his behavior while he was confined in four-point restraints on

19

that date.

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." Gleason v. Smolinski, 319 Conn. 394, 430 n.30, 125 A.3d 920, 947 n.30 (2015) (internal quotation marks and citation omitted). To state a claim of defamation under Connecticut law, a "plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Id. at 430-31, 125 A.3d at 947 (internal quotation marks and citation omitted). "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 431, 125 A.3d at 947 (internal quotation marks and citation omitted).

Under Connecticut law, "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of." Conn. Gen. Stat. § 52-597. The statute of limitations ordinarily is an affirmative defense. If the allegations asserted in the complaint demonstrate that the relief sought is barred by the applicable statute of

20

limitations, however, a district court may dismiss the complaint sua sponte on that ground.  See Walters v. Industrial and Commercial Bank of China, Ltd., 651 F.3d 280, 293 (2d Cir. 2011) (recognizing that a district court "may dismiss an action sua sponte on limitations grounds in certain circumstances where 'the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted.'")(quoting Leonhard v. United States, 633 F.2d 599, 600 n.11 (2d Cir. 1980)); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a district court may dismiss a complaint on initial review based on a defense, such as the statute of limitations, that appears on the face of the complaint); Harnage v. Torres, 665 F. App'x 82, 83 (2d Cir. 2016) (affirming sua sponte dismissal of inmate's claims as barred by the statute of limitations).

Even if Wang had asserted facts to meet all the elements of a defamation claim against the defendants, Kurlyandchik, Dreisbach, Mejias, Madison and Delciampo, the claim would be barred by the statute of limitations applicable to defamation claims.

Wang alleges that on February 22, 2017, Drs. Kurlyandchik and Dreisbach and nurses Mejias, Madison and Delciampo entered notations in his medical records that inaccurately described or mischaracterized Wang's behavior during his confinement in four-

point restraints on that date.  Wang's motion seeking leave to
file the amended complaint, and the proposed amended complaint
that he attached to the motion containing the proposed
defamation claims, were both dated October 28, 2020 and were
received by the clerk for filing on October 29, 2020.  See ECF
Nos. 129, 129-1.  On September 14, 2021, the court granted the
motion to file the amended complaint.  Thus, the amended
complaint is dated and was filed more than two years after the
defendants' entries in Wang's medical records.

Even if the court were to consider that the October 21,
2019 amended complaint [ECF No. 102], which the court struck
from the docket on September 25, 2020, included a defamation
claim against Kurlyandchik, Dreisbach, Mejias, Madison, and
Delciampo, it would still be untimely and outside the applicable
limitations period.

Wang's allegations that Drs. Kurlyandchik and Dreisbach and
nurses Mejias, Madison and Delciampo's February 22, 2017 entries
in Wang's medical records were defamatory are barred by the
applicable two-year statute of limitations.  To the extent that
Wang intended to assert a defamation claim under state law
against these defendants, that claim is dismissed.  See 28
U.S.C. § 1915A(b)(1).

22

**(b)  Negligence**

Wang contends that Delphin-Rittmon, Vartelas and Ward-McKinlay were negligent in their "official duties."  He also includes allegations against Dr. Dreisbach sounding in negligence.  Wang contends that in an entry made to his medical records on February 23, 2017, Dr. Dreisbach mistakenly noted that Wang had not suffered a loss of consciousness when he fell in the bathroom earlier that morning.  Wang also states that after he returned from Middlesex Hospital later that day, Dr. Dreisbach neglected to consider prescribing Wang an antibiotic as suggested by the emergency room physician who examined and treated Wang at the hospital.

A plaintiff must plead the elements of "duty, breach, causation, and actual injury" in order to state a claim of negligence under Connecticut law.  Edwards v. McMillen Cap., LLC, No. 3:18-CV-346 (SRU), 2021 WL 1178399, at *13 (D. Conn. Mar. 29, 2021) (citing Radesky v. First Am. Title Ins. Co., No. 3:02CV1304 (JBA), 2003 WL 22119183, at *5 (D. Conn. Aug. 29, 2003)).  As indicated above, Wang sues the defendants in their individual capacities.  He seeks compensatory and punitive damages.

Connecticut General Statutes § 4-165(a) provides: "No state employee shall be personally liable for damage or injury, not

wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment."  Miller v. Egan, 265 Conn. 301, 319 (2003).

Furthermore, "[a]ny person having a complaint for [ ] damage or injury" not caused by wanton, reckless or malicious conduct must "present it as a claim against the state" to the state claims commissioner, who may authorize suit against the state or the state official.  Conn. Gen. Stat. §§ 4-160(a), 4-165(a); see also Miller, 265 Conn. at 319, 828 A.2d at 561-62 (recognizing that Connecticut General Statutes "§ 4-165 makes clear that the remedy available to plaintiffs who have suffered harm from the negligent actions of a state employee who acted in the scope of his or her employment must bring a claim against the state under the provisions of this chapter, namely, chapter 53 of the General Statutes, which governs the office of the claims commissioner.")(internal quotation marks omitted).  When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted ...."  Conn. Gen. Stat. § 4-160(c).

There are no allegations that Dr. Dreisbach, commissioner Delphin-Rittmon, chief executive officer Vartelas, or director

Ward-McKinlay acted outside the scope of their employment.  To
the extent that Wang alleges that the defendants, Dreisbach,
Delphin-Rittmon, Vartelas and Ward-McKinlay, in their individual
capacities, engaged in negligent conduct, they are entitled to
statutory immunity.  Conn. Gen. Stat. § 4-165(a); Miller v.
Egan, 265 Conn. 301, 319 (2003).

In addition, Wang has not alleged that he filed a claim
with the state claims Commissioner or that he received the
required authorization to file suit against the State and its
officials for their negligent conduct.  Accordingly, to the
extent that Wang intended to assert negligence claims for
monetary damages under state law, he has also failed to satisfy
the statutory requirements of such claims, Conn. Gen. Stat. §§
4-160(a), 4-165(a); see also Miller, 265 Conn. at 319, 828 A.2d
at 561-62, and they are, therefore, dismissed.  See 28 U.S.C. §
1915A(b)(2).

## ORDERS

**The court enters the following orders:**

**(1)**  The following claims asserted in the amended complaint
[ECF No. 139] are dismissed pursuant to 28 U.S.C. § 1915A(b)(1):
The claim seeking declaratory relief from all defendants for
violations of Wang's federal constitutional rights; the
Fourteenth Amendment claims asserted against the defendants,

Delphin-Rittman, Vartelas and Ward-McKinlay, in their individual capacities; and the state law defamation claim asserted against the defendants, Kurlyandchik, Dreisbach, Mejias and Madison, in their individual capacities.  The state law negligence claims asserted against the defendants, Dreisbach, Delphin-Rittman, Vartelas and Ward-McKinlay, in their individual capacities for monetary damages, are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).  Thus, all claims asserted against the defendants, Delphin-Rittman, Vartelas and Ward-McKinlay, have been dismissed.

The following two claims will proceed: (1) the Fourteenth Amendment claim that the defendants, Mejias, Madison, Delciampo, Kurlyandchik and Dreisbach, in their individual capacities, used or facilitated the use of excessive or unreasonable force against Wang by continuing to confine him in restraints for ten hours even though he was not engaging in violent or threatening conduct; and (2) the Fourteenth Amendment claim that the defendants, Mejias, Hall, and Dreisbach, in their individual capacities, failed to secure a court order to involuntarily medicate Wang with Benadryl or provide him with enough information to enable him to make an informed decision about the recommendation that he be medicated with Benadryl in conjunction with the court-ordered injections of Zyprexa and Geodon.

26

**(2)**   Within twenty-one (21) days of this order, the clerk shall send a waiver of service of process request packet, including a copy of the amended complaint [ECF No. 139], to each of the following defendants in their individual capacities: Dr. Diana Kurlyandchik and registered nurses Clara Mejias, Heather Madison, Judy Hall and Misty Delciampo, at Whiting Forensic Hospital, 70 O'Brien Drive, Middletown, Connecticut 06457.  On the thirty-fifth (35th) day after mailing, the clerk shall report to the court on the status of each request.  If any defendant fails to return the waiver request, the clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)**   The defendants, Kurlyandchik, Dreisbach, Mejias, Madison, Hall, and Delciampo, shall file their response to the amended complaint [ECF No. 139], either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include all additional defenses permitted by the federal rules.

27

**(4)**   Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

**(5)**   Any motions for summary judgment may be filed within seven months (210 days) from the date of this order.

**(6)**   If Wang changes his address at any time during the litigation of this case, local rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Wang should write PLEASE NOTE MY NEW ADDRESS on the notice.  Wang should also notify the defendants or the attorney for the defendants of his new address.

**(7)**   Wang shall utilize the Prisoner Efiling Program when filing documents with the court.  Wang is advised that the program may be used only to file documents with the court. local rule 5(f) provides that discovery requests are not to be filed with the court.  Therefore, discovery requests must be served on the defendants' attorney by regular mail.

(8)  The clerk is directed to send a copy of this ruling and a copy of the amended complaint [ECF No. 139], to Wang at the address listed on the docket as his current place of

confinement.

It is so ordered at Hartford, Connecticut this 21st day of October 2021.

```
                        _____/s/_____
                        Alfred V. Covello
                        United States District Judge
```